**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEUBEN FOODS, INC., | Case No. 1:13-cv-892-WMS |
| *Plaintiff*, | **Nestlé USA's Submission in Support of Continuing Stay (Order No. 52)** |
| v. | |
| NESTLÉ USA, INC. | |
| *Defendant*. | |

**CONTENTS**

I.  INTRODUCTION ................................................................................................................ 1

II. PROCEDURAL BACKGROUND.................................................................................... 3

III. ARGUMENT...................................................................................................................... 6

    A.  Legal standards for staying litigation pending Patent Office review...................... 6

    B.  Continuing the stay will greatly simplify the issues in question and the trial in this case.................................................................................................................................. 7

        1.  IPR schedule ........................................................................................... 10

        2.  Litigation schedule if the stay is lifted..................................................... 10

        3.  Resources will be wasted by conducting parallel proceedings................. 11

    C.  Extending the stay will not unduly prejudice or tactically disadvantage Steuben 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alpex Computer Corp. v. Nintendo Co.*,
   102 F.3d 1214 (Fed. Cir. 1996) ..................................................................................13

*Dataquill Ltd. V. High Tech Computer Corp.*,
   No. 08-cv-543-IEG-LSP, 2009 WL 1391537 (S.D. Cal. May 14, 2009) ...................14

*Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*,
   2009 WL 3162213, Case No. 08-cv-299S (W.D.N.Y. Sept. 28, 2009)
   (Skretny, J.) ..................................................................................................................7

*Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*,
   922 F.Supp.2d 486 (D. Del. 2013) ..............................................................................14

*Versata Software, Inc. v. Callidus Software, Inc.*,
   771 F.3d 1368 (Fed. Cir. 2014), The CBM ..................................................................8

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
   759 F.3d 1307 (Fed. Cir. 2014) ............................................................................14, 15

*Xerox Corp. v. 3Com Corp.*,
   69 F. Supp. 2d 404 (W.D.N.Y. 1999) ...........................................................................7

**Statutes**

35 U.S.C. § 314 ......................................................................................................................1

35 U.S.C. § 316 ................................................................................................................1, 13

America Invents Act § 18 ......................................................................................................8

**Other Authorities**

37 C.F.R. § 42.100 ....................................................................................................6, 13, 14

37 C.F.R. § 42.108 .................................................................................................................1

37 C.F.R. § 42.121 ...............................................................................................................12

77 Fed.Reg. 48,680 (Aug. 14, 2012) (codified at 37 C.F.R. §§ 42.100 et seq.) ....................1

**I.     INTRODUCTION**

In 2011, Congress passed the America Invents Act ("AIA") and established *inter partes* review ("IPR") proceedings in the U.S. Patent and Trademark Office ("PTO"). Pursuing the AIA's goal "to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs," the PTO created the IPR regulations "to create a timely, cost-effective alternative to litigation." 77 Fed.Reg. 48,680 (Aug. 14, 2012) (codified at 37 C.F.R. §§ 42.100 et seq.). To that end, defendants are given one year after being sued in which to file an IPR petition, and IPR proceedings are instituted only if the defendant establishes a "reasonable likelihood that at least one of the claims . . . is unpatentable." 37 C.F.R. § 42.108(c); 35 U.S.C. § 314(a). Absent "good cause" for extending the proceedings, the PTO must conclude an IPR within one year of institution. *See* 35 U.S.C. § 316(a)(11).

In the short time since passage of the AIA, patent litigants and district courts have embraced IPRs as a means for simplifying patent litigation. In particular, courts usually stay parallel patent litigation when an IPR has been instituted. Through October, district courts have stayed 82% of cases when a stay motion was filed after an IPR was instituted. Ex. A, B. Love et al., *Inter Partes* Review: An Early Look at the Numbers, 81 U. Chicago L. Rev. Dialogue 93, 104 (Oct. 20, 2014).[1] One of the reasons courts stay such cases is because in 77% of the 160 IPRs that have reached a final decision on the merits, *all instituted claims* were invalidated or disclaimed—drastically simplifying (if not outright mooting) any parallel litigation. Ex. A, B. Love et al., at 104. In all other cases, the litigation was simplified by the IPR estoppel provisions.

---

[1] Documents cited as Exhibits to this submission are submitted with the accompanying Declaration of T. Akagi.

Here, Nestlé USA has filed petitions for IPR for all five Steuben patents asserted in this litigation. The PTO has already instituted Nestlé USA's IPR for Steuben's '013 patent, including all the claims that Steuben has asserted against Nestlé USA's machines. The PTO is also almost certain to institute Nestlé's IPR petitions for Steuben's other patents because the PTO previously instituted IPRs for these patents based on GEA's petitions. GEA's IPRs have since been terminated, but the IPRs were terminated for a *procedural defect* that did not undermine the PTO's decision that Steuben's patent claims are likely unpatentable. Thus, it is likely that the PTO will initiate Nestlé USA's other IPRs in next few months. After Nestlé USA's IPRs are decided (beginning no later than December 2015), this case will be greatly simplified, either by finding that Steuben's claims are unpatentable or by estoppel.

Simplification of Steuben's suits is desperately needed. Steuben has filed five suits against seven parties over three years. Those parties use at least three different bottling systems. Steuben has asserted five separate patents and has alleged infringement of at least 56 different claims. Steuben also has filed five pending reissue patent applications adding 120 new claims. In addition, separately from the IPRs, the PTO also has reexamined all five patents. Two reexaminations concluded after the litigation began, resulting in nearly all of the originally asserted claims being canceled or amended and 20 new claims being added. In the other three reexaminations, Steuben has added 108 new claims. Two of those reexaminations are now closed, with all but one asserted claim found unpatentable. Steuben has appealed those rulings of unpatentability.

Much of this complexity and timing stems from Steuben's own actions. Steuben delayed filing suit against GEA for at least a year after sending GEA a letter complaining of alleged infringement, and it delayed at least two years before suing Nestlé USA after sending a similar

letter, thus putting the cases on different tracks. Steuben has alleged infringement of an inordinate number of claims—making claim construction a Herculean task and presenting a jury with unreasonable complexity. Steuben has filed reissue patent applications with new claims, and amended and added claims during reexamination, thus guaranteeing that Steuben's allegations will continue to be a moving target. In addition, rather than allow the PTO to decide GEA's IPRs on the merits (which would have greatly simplified the case), Steuben moved to terminate those IPRs on a procedural defect to avoid a decision on the merits. Thus, to the extent Steuben complains about delays in this case, it has only itself to blame.

The PTO's termination of GEA's IPRs should not obscure the merits of further staying these cases based on Nestlé USA's IPRs. Nestlé USA filed its petitions for IPR within the statutory one year after service of a complaint. Steuben's suit against Nestlé USA is in its infancy—indeed, Nestlé USA has not even answered Steuben's complaint, putting Nestlé USA in an even more compelling position than GEA when the Court decided to stay the cases in light of GEA's IPRs. Moreover, the suit against Nestlé USA is lagging behind Steuben's suits against all other defendants, because Steuben chose to delay filing suit against Nestlé USA. Certainly, Nestlé USA should not be disfavored in its motion for a stay by the fact that Steuben delayed bringing suit against Nestlé USA and has done everything possible to delay IPR decisions. The circumstances plainly favor a stay. The vast majority of district courts that have faced this situation have entered stays, recognizing that a stay greatly simplifies the case.

## II. PROCEDURAL BACKGROUND

Steuben served its complaint against Nestlé USA on November 12, 2013—over one year after Steuben sued GEA. Dkt. No. 10.[2] On December 17, 2013, Nestlé USA moved to dismiss the complaint, strike the complaint in part, and transfer venue. Dkt. No. 16. By Order dated

---

[2] Except where otherwise indicated, citations to docket numbers refer to the docket in Steuben's suit against Nestlé USA.

3

July 29, 2014, Nestlé USA's motion to strike was granted and the remainder of its motions were denied. Dkt. No. 49. As detailed below, the cases had already been stayed at that point; therefore, Nestlé USA has not filed its answer or counterclaim. Indeed, the due date for Nestlé USA to file its answer and any counterclaim will not be set until after the stay is lifted.

Before Steuben served a complaint on Nestlé USA, GEA filed petitions for IPR of Steuben's patents in October 2013. *See Steuben v. GEA*, Dkt. No. 132 [GEA's Reply in Supp. Of Mot. to Stay] at 8 (May 13, 2014). According to GEA, it filed the IPR petitions shortly after being informed which patent claims Steuben intended to assert against it (and thus, presumably, which patent claims GEA needed to challenge). *Id.* The Board instituted IPRs against all five Steuben patents on March 10, 2014, based on finding a reasonable likelihood—i.e., that GEA had made out a *prima facie* showing—that that the challenged claims are invalid over the prior art. *Steuben v. GEA*, Dkt. No. 105 [GEA's Mot. to Stay] at 1; *see*, *e.g.*, *Steuben v. GEA*, Dkt. No. 105-1 ['013 patent institution order] at 2 (Mar. 10, 2014).

Based on the findings in the Board's institution decisions, GEA moved to stay the litigation. *Steuben v. GEA*, Dkt. No. 105 at 1. The Court granted GEA's requested stay. *See* Dkt. No. 43 (Jun. 10, 2014). The Court indicated at the hearing on GEA's motion that the Board's determination of reasonably likely invalidity was significant to its decision. As the Court noted, "I'm inclined to grant the stay because I think that it's very likely that the IPR proceeding is going to result in an elimination of many of the claims or at least a modification of them such that – and/or amendments such that we'll be dealing with a different case next March [when the Board's final determination would have been due] than we are now," and that "it seems to me likely that many of these claims are going to be invalidated anyway based on what the Patent Office has said thus far." Dkt. No. 41 [Hr'g Tr.] at 7, 13 (hearing conducted May 28, 2014). The

4

Court also stayed Steuben's cases against the non-GEA defendants (including Nestlé USA) on the condition that all other defendants would be estopped from asserting any invalidity contention that was actually raised and finally adjudicated in the final written decision of the Board. Dkt. No. 43. Because the Board has since terminated GEA's IPRs on procedural rather than substantive grounds, those IPRs did not result in a final determination, and the estoppel terms—and the efficiencies they represented—were rendered moot.

Early in the course of GEA's IPR proceedings, Steuben indicated that it would challenge GEA's IPR petitions on the procedural basis that GEA failed to name a real party in interest. *See, e.g.*, Ex. B, Steuben's List of Proposed Mots., IPR2014-00041, Paper 17 at 2 (Mar. 27, 2014). Steuben filed a motion to terminate on that basis on August 18, 2014. Ex. C, Redacted Version of Steuben's Aug. 18 Mot., IPR2014-00041, Paper 115 (Oct. 10, 2014). Recognizing that Steuben's IPR defense could result in the Board failing to address the invalidity issues raised by GEA (as has now come to pass), Nestlé USA filed its own petitions for IPR between August and early November 2014.[3] Each petition asserted much of the same art that the Board already found reasonably likely to invalidate Steuben's claims. Below is a summary of Nestlé USA's IPR petitions, comparing Nestlé USA's asserted references with the grounds on which the Board previously instituted GEA's IPRs. Given the similarities, it is almost certain that the Board will institute IPRs based on Nestlé USA's petitions, and that the Board will institute quickly. For example, in the case of the '013 patent, the Board instituted IPR *seven weeks early*, despite Steuben presenting its preliminary arguments in favor of patentability. See Ex. I, Institution

---

[3] Ex. D, Notice of Filing Date, IPR2014-01235 [*in re* the '013 patent], Paper 6 (Aug. 14, 2014);
Ex. E, Notice of Filing Date, IPR2015-00023 [*in re* the '188 patent], Paper 5 (Nov. 5, 2014);
Ex. F, Notice of Filing Date, IPR2015-00094 [*in re* the '591 patent], Paper 5 (Nov. 13, 2014);
Ex. G, Notice of Filing Date, IPR2015-00195 [*in re* the '435 patent], Paper 5 (Nov. 18, 2014);
Ex. H, Notice of Filing Date, IPR2015-00249 [*in re* the '468 patent], Paper 5 (Dec. 11, 2014).

Decision, IPR2014-01235, Paper 12 (Dec. 22, 2014). Should the Board follow a similar schedule in the other cases, institution orders are expected as early as March and April.

| Patent | References Overlapping with Board's Prior Institution Decision | Steuben's Preliminary Response Due | Board Institution Decision Due |
|---|---|---|---|
| 6,945,013 | *ZFL*, *Bosch*, *Chambers* | Nov. 14 (filed) | Feb. 14 *Issued Dec. 22* |
| 6,209,591 | *ZFL*, *David*, *Takei*, *Bev Tech* | Feb. 13 | May 13 |
| 6,536,188 | *Willhoft*, *Cosentino*, *Teske* | Feb. 5 | May 5 |
| 6,475,435 | *ZFL*, *Kelbrick*, *FDA Regulations*, *Chambers*, *Scholle* | Feb. 25 | May 25 |
| 6,481,468 | *ZFL*, *Takei*, *Bev Tech*, *David* | Mar. 11 | Jun. 11 |

In view of Nestlé USA's petitions, the circumstances supporting continuing the stay are not substantially different from those under which the stay was first granted. The PTO has found the challenged claims of the '013 patent reasonably likely invalid, and ther is every reason to expect similar findings with respect to the other patents in the coming months. Following institution, the PTO must issue a final written determination within one year. 37 C.F.R. § 42.100(c). The Chief Administrative Patent Judge may extend that deadline by up to six months for good cause; however, to Nestlé USA's knowledge, the Board has ***never*** done so.

### III.    ARGUMENT

#### A.    Legal standards for staying litigation pending Patent Office review

GEA set forth the standards for staying district court litigation in favor of *inter partes* review in its first stay motion. *Steuben v. GEA*, Dkt. No. 54 at 4 § III (Jul. 24, 2013). In summary, courts typically consider three factors in determining whether a stay should be granted:

1. Whether a stay will simplify the issues in question and trial of the case;

2. Whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; and

3. Whether discovery is complete and whether a trial date has been set.

6

*Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999). In view of those factors, this Court acknowledged even before IPRs existed that "[t]here is a 'liberal policy in favor of granting motions to stay proceedings pending the outcome of the USPTO reexamination or reissuance proceedings.'" *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 2009 WL 3162213, at *4, Case No. 08-cv-299S (W.D.N.Y. Sept. 28, 2009) (Skretny, J.).

As when GEA filed its stay motion, all three factors continue to favor staying this case. Obviously, the third factor favors stay, particularly as to Nestlé USA. Because Nestlé USA has *not even answered the complaint*, discovery has not begun, nor has a trial date been set. The third factor also favors a stay as to the other defendants because each case is in the early stage, with little, if any, discovery having occurred and no schedule for claim construction, trial or other events having been set. Nestlé USA addresses the remaining two factors below.

    **B.**    **Continuing the stay will greatly simplify the issues in question and the trial in this case**

The Board has already found Steuben's patent claims reasonably likely invalid in GEA's IPRs. The Board has repeated that finding in Nestlé USA's '013 patent IPR, and almost surely will repeat that finding in Nestlé USA's IPRs of the remaining patents. Thus, there can be no question that staying the litigation in favor of IPR will simplify the issues in this case.

Although Steuben has not identified the specific claims that it intends to assert against Nestlé USA, Nestlé USA believes that it has challenged in its IPR petitions every claim that Steuben could possibly assert under Rule 11 of the Federal Rules of Civil Procedure; therefore, a final IPR determination that the challenged claims are invalid would effectively moot Steuben's entire case against Nestlé USA.[4] Further, even if the Board were to invalidate (or institute review

---

[4] Although Steuben has no basis to assert any of the claims that Nestlé USA left unchallenged, Nestlé USA does not concede that any claim that it *did* challenge could be properly asserted by

7

of) only a portion of the claims that Steuben could assert against Nestlé USA, such a result still would simplify the case and warrants a stay. As the Federal Circuit has held in the context of analogous Covered Business Method ("CBM") review by the PTO, "[s]tays can be warranted even when a [review] proceeding does not address all asserted patents, claims, or invalidity defenses." *Versata Software, Inc. v. Callidus Software, Inc.*, 771 F.3d 1368, 1371-72 (Fed. Cir. 2014).[5] In addition, even if the Board confirms patentability of one or more of Steuben's claims after IPR, the case would be greatly simplified due to the estoppel effects of that determination.

Congress and the PTO have so heavily favored *inter partes* review proceedings as a means to simplify and expedite complex and expensive patent litigation that, as noted by commentators including Steuben's lead counsel in the IPRs, Greg Gardella, those provisions effectively "may compel judges to stay a parallel litigation pending completion of an IPR by the USPTO." Ex. J, *Post-Grant Proceedings Before the Patent Trial and Appeal Board* § 15:3 (G. Gardella et al., eds., Nov. 2014) ("Gardella et al."). As those commentators explain, "judges considering whether or not to stay the litigation pending the new IPR proceeding will consider the following scenarios in the case of a parallel IPR":

> 1. If the stay is granted, in twelve to eighteen months [from institution] . . . the IPR will either simplify the validity issues in dispute by operation of estoppel, or perhaps resolve the dispute altogether by invalidating the patent. This is because, by statute, the IPR proceeding must conclude within twelve to eighteen months from the time of USPTO initiation.

---

Steuben. Nestlé USA does not concede that Steuben has an adequate basis to assert any patent claim against it.

[5] The CBM statute codifies the factors relevant to a stay of litigation pending CBM review. AIA § 18(b)(1)(A)-(D). Those factors include "whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial."

> 2. If the stay is *not* granted and the court result comes first, IPR will continue and possibly conclude with a different result [which would trump the court's judgment[6]]. Alternatively, if the USPTO result comes first (very likely, if concluded on time) the court may be wasting resources in continuing on a parallel track.

Ex. J, Gardella et al. § 15.3. The relative speed of IPR proceedings—resulting in estoppel and/or invalidity within 12-18 months—"creates a conundrum" even for courts disinclined to stay litigation:

> Should the court's and the parties' resources be spent on issues which are *in all likelihood going to be rendered moot before trial*? Even if the district court is not substantially concerned with the parties' expenditures, judicial economy weighs heavily against dedicating the court's limited resources to adjudication of the substantial motion practice which arises from fact and expert discovery relating to soon-to-be-moot issues.

Ex. J, Gardella et al. § 15:4.3 (emphasis added). "Clearly," the commentators observe, "fending off a motion to stay an ongoing patent litigation pending IPR will be an uphill battle for future plaintiffs." Ex. J, Gardella et al. § 15:3. The operation of this IPR regime undoubtedly explains why district courts addressing the issue before claim construction briefing overwhelmingly stay litigation in favor of IPR. Ex. A, Love at 104.

To illustrate the particular ways in which party and judicial resources would be *preserved* by extending the stay (or, conversely, *wasted* by lifting the stay), it is useful to compare the schedule of Nestlé USA's IPRs with the expected litigation schedule.

---

[6] As noted by Gardella et al., Federal Circuit precedent establishes that "the PTO's cancelation of the patent claims in patent reexamination render[s] them *void ab initio*," meaning that patentee would simply lose its infringement cause of action unless the Federal Circuit were to affirm the district court's decision *before* the Board issued its IPR determination (an impossible result, given the statutory IPR time limit). Ex. J, Gardella et al. § 15:7 (citing *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013)).

### 1.     IPR schedule

At the PTO, Steuben and Nestlé USA are scheduled to submit briefing regarding invalidity of the '013 patent in March, May, and June, and the Board will hear oral argument on August 4, 2015. Ex. K, Scheduling Order, IPR2014-01235, Paper 13 (Dec. 22, 2014). The Board's final written determination is due not later than December 22, 2015. Assuming that the Board follows a similar schedule in Nestlé USA's remaining IPRs, Steuben and Nestlé USA may be scheduled to submit briefing in June, August, and September, and the Board may hear oral argument as early as November or December of 2015. The Board's final written determinations will be due, by statute, within one year of institution: no later than May and June 2016, but potentially as early as March 2016, assuming the Board institutes early as it did for the '013 patent IPR.

### 2.     Litigation schedule if the stay is lifted

If the stay is lifted on March 10, 2015, much is likely to occur in this case over the course of the next year. Nestlé USA will answer Steuben's complaint, the parties will conduct a Rule 26(f) meeting and file a Civil Case Management Plan in advance of a Court Management Conference, and, thereafter, discovery will begin. Depending upon the schedule set by the Court, the parties likely will have exchanged both initial and final infringement and invalidity contentions. Again depending upon the schedule set by the Court, the parties may have exchanged proposed claim terms and proposed claim constructions, claim construction discovery may have taken place, and claim construction briefing may have begun. In the interim, it can be expected that the parties will have scheduling and discovery disputes, and, given the need to simplify the case and findings by the PTO during GEA's IPR proceedings, it is likely that summary judgment or substantive motions will be filed. It will be a very busy year for this Court and the parties.

It goes without saying that these proceedings will place a heavy burden on the Court and the parties. There are likely to be numerous discovery disputes and related motions for the Court to resolve, as has been evidenced already in the GEA and Shibuya cases. The infringement and invalidity contentions alone (for each party) are expected to span many hundreds of pages, given the number of patents asserted, the number of claims alleged to be infringed, and the scope of the infringement defenses that are available to the defendants. The fact that Steuben has amended claims and added new claims will also give rise to complex intervening rights and equitable estoppel issues. The claim construction issues will be equally formidable. Because Steuben has asserted at least 56 claims, it is likely that dozens of claim construction disputes will require briefing and court decisions.

### 3. Resources will be wasted by conducting parallel proceedings

When the Board issues its final determination on the '013 patent by December 2015, any litigation contentions and briefing on that patent, and the Court's consideration thereof, will have been wasted. The same will hold true for the other patents when the Board issues its remaining final determinations in early to mid-2016. Either Nestlé USA will prevail in invalidating the claims in the IPRs, or it will fail and be estopped from challenging validity based on published prior art. If Nestlé USA prevails, then Steuben's infringement contentions and Nestlé USA's non-infringement contentions (likely in 2015) will be moot. Further, even if Nestlé USA fails in the IPRs, all invalidity contentions based on prior art publications (also likely due in 2015) will have been for naught.

As to claim construction, while the '013 patent IPR will conclude before claim construction briefing would likely be scheduled, the Board's remaining IPR determinations could be issued substantially concurrently with claim construction briefing. Even if the IPR decisions do not entirely moot the need for claim construction (i.e., to the extent Steuben asserts claims not

11

invalidated by the Board), the findings and determinations in the IPR decisions would almost certainly impact the interpretation and scope of the claim terms. As a result, any claim construction briefs, declarations, and expert discovery would have to be resubmitted or supplemented to address the IPR decisions. Moreover, any Court decisions bearing on claim construction likewise may need to be revisited.

In addition to the IPR final determinations, the IPR briefing and argument also will impact claim construction (and, by extension, infringement and invalidity contentions). Most significantly, Steuben is permitted to amend the claims of the patents during IPR. *See* 37 C.F.R. § 42.121. Steuben has shown no reluctance to amend its claims thus far during PTO proceedings. In reexamination of the '188 patent, Steuben amended one claim, canceled 17 claims, and added 20 new claims. Ex. L, '188 Patent Reexamination Certificate (Sept. 12, 2013). In reexamination of the '591 patent, Steuben canceled one claim and amended (directly or indirectly) 27 others. Ex. M, '591 Patent Reexamination Certificate (Nov. 25, 2013). In the GEA IPRs, Steuben moved to amend two claims of the '468 patent and three claims of the '013 patent. Ex. N, IPR2014-00054, Paper 31 at 1-3 (May 23, 2014); Ex. O, IPR2014-00041, Paper 36 at 1-3 (May 23, 2014). Steuben also has sought to add approximately 20 new claims to the '468 patent in reexamination, add 45 new claims to the '013 patent in reexamination, add 43 new claims to the '435 patent in reexamination, and add 120 new claims to the '013 patent via five separate reissue applications.[7] Clearly, Steuben's patent claims are a moving target. Further, any claims amended in IPR will

---

[7] Ex. P, Listing of Claims on Appeal from '468 Patent Reexamination; Ex. Q, Listing of Claims on Appeal from '013 Patent Reexamination; Ex. R, Listing of Claims in '435 Patent Reexamination; Ex. S, Listing of Claims in Reissue Application No. 14/010,377; Ex. T, Listing of Claims in Reissue Application No. 14/198,368; Ex. U, Listing of Claims in Reissue Application No. 14/248,929; Ex. V, Listing of Claims in Reissue Application No. 14/249,031; Ex. W, Listing of Claims in Reissue Application No. 14/249,060.

require the parties to amend or completely re-do their infringement, non-infringement, invalidity, and validity contentions, and will require substitute or at least supplemental briefing on claim construction issues.

In addition, even if certain patent claims emerge from the IPRs unchanged, "statements in the reexamination record that are inconsistent with arguments made in a concurrent litigation, or that rise to the level of an outright disclaimer, may influence claim construction in the litigation." *See* Ex. J, Gardella et al. § 15:5.3 (citing *Beneficial Innovations, Inc. v. Blockdot, Inc.*, Nos. 2:07-cv-263-TJW-CE and 2:07-cv-555-TJW-CE, 2010 WL 2246291 (E.D. Tex. Jun. 3, 2010)); *see also Alpex Computer Corp. v. Nintendo Co.*, 102 F.3d 1214, 1221-22 (Fed. Cir. 1996) (a patentee who takes one position to secure the allowance of a claim before the Patent Office is estopped from taking a different position to allege infringement in court). Thus, any arguments made by Steuben in IPR to distinguish its claims over the prior art are highly relevant to Steuben's claim construction and infringement arguments in the litigation. Steuben will submit validity arguments in the IPR proceedings between roughly March and September 2015, and will make additional arguments in the IPR oral arguments between August 2015 and roughly December 2015. Each such argument from Steuben will provide additional information that willnimpact the parties' contentions and this Court's claim construction decision. Accordingly, conducting the litigation in parallel with IPR will result in an extraordinarily complicated scenario in which the parties will have to revise or supplement their contentions and claim construction briefing repeatedly as new developments arise in IPR.

### C. Extending the stay will not unduly prejudice or tactically disadvantage Steuben

By statute, Nestlé USA's IPR of the '013 patent must conclude no later than December 2015. *See* 35 U.S.C. § 316(a)(11); 37 C.F.R. § 42.100(c). The deadline for the Board

13

to conclude Nestlé USA's remaining IPRs will be set one year from the Board's institution decisions, i.e., no later than May or June 2016 (if not earlier), unless the Chief Administrative Patent Judge issues an unprecedented extension (of *at most* six months) for good cause shown. *See* 37 C.F.R. § 42.100(c). Accordingly, in all likelihood, continuing the stay until Nestlé USA's IPRs conclude would delay this case by no more than 9-15 months.[8]

The relevant consideration is not whether a stay would cause Steuben *some* prejudice (as any opposed delay may do), but whether any prejudice to Steuben would be *undue*. *Accord VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014) (holding in an analogous context that "whether the patentee will be unduly prejudiced by a stay in the district court proceedings during the CBM review . . . focuses on the patentee's need for an expeditious resolution of its claim"). A short, finite stay of 9-15 months would cause no undue prejudice to Steuben, particularly given Steuben's delays in filing the instant litigation.

First, the only potential prejudice to Steuben would be a delay in collecting damages, which does not constitute undue prejudice. *See, e.g., Dataquill Ltd. V. High Tech Computer Corp.*, No. 08-cv-543-IEG-LSP, 2009 WL 1391537, at *3 (S.D. Cal. May 14, 2009) ("Where Plaintiffs have an adequate remedy at law, there is no undue prejudice."). Steuben and Nestlé USA are not competitors, such that there could be a "reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the loss of market share and an erosion of goodwill." *Cf. Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*, 922 F.Supp.2d 486, 494 (D. Del. 2013)

---

[8] If this court prefers to base a continued stay on the pendency of Nestle USA's IPRs as to all five Steuben patents, it need only grant a short conditional extension of the current stay until institution decisions are rendered on the four remaining IPR petitions, which must occur by early June and are likely to occur in the next couple of months.

(quoting *SenoRx, Inc. v. Hologic, Inc.*, No. 12–173–LPS–CJB, 2013 WL 144255, at *5 (D. Del. Jan. 11, 2013)). Rather, Steuben is a contract bottler, and as Steuben has acknowledged, Nestlé USA is a "customer" of Steuben. *Steuben v. GEA*, Dkt. No. 59 at 2 (Aug. 23, 2013). Moreover, Steuben's failure to seek a preliminary injunction against Nestlé USA, while not dispositive, is evidence that money damages (regardless of delay) would be sufficient to make Steuben whole. *See VirtualAgility*, 759 F.3d at 1319 ("the fact that it was not worth the expense to ask for this remedy contradicts [plaintiff's] assertion that it needs injunctive relief as soon as possible").

Second, any delay from Nestlé USA's IPRs is the direct result of Steuben's litigation and IPR decisions. Steuben set the statutory deadline for Nestlé USA to request IPRs by serving a complaint on Nestlé USA more than a full year after suing GEA. *Compare* Dkt. No. 10 [return of summons on Nestlé USA] (Nov. 22, 2013) *with Steuben v. GEA*, Dkt. No. 7 [return of summons on GEA] (Oct. 19, 2013). If Steuben desired faster resolution of Nestlé USA's IPR challenges, Steuben should not have sat on its claims by delaying its suit. Steuben waited nine years to sue GEA after first learning about GEA's accused products in 2003, and waited at least *four years* to sue Nestlé USA after learning about Nestlé USA's accused machines in 2009. *See Steuben v. GEA*, Dkt. No. 105 [GEA's Mot. to Stay] at 17 (Mar. 31, 2014). In view of Steuben's own litigation delays, a short stay of 9-15 months is not undue prejudice to Steuben.

Third, continuing the stay would not have become an issue if Steuben had not challenged GEA's IPRs on procedural grounds. Allowing GEA's IPRs to be decided on the merits would have provided for a much more expeditious resolution of the validity dispute (i.e., by March 10, 2015). Notably, a decision on the merits in GEA's IPRs would have benefitted Steuben by estopping the defendants from raising the same invalidity grounds in this case. Instead, rather than tackle the merits of GEA's IPRs, Steuben chose to saddle this Court with the same

invalidity issues that had been presented to the PTO and were ripe for decision. Nestlé USA is not faulting Steuben for challenging GEA's IPRs, even on procedural grounds. That was its right. Nonetheless, the fact that Steuben invoked that right should factor into whether Nestlé USA's efforts to revive the efficiency-saving aspect of IPR proceedings (i.e., through a stay of parallel litigation) would cause "undue" prejudice to Steuben.

## CONCLUSION

For the reasons stated above, the stay should continue pending the issuance of final written determinations in Nestlé USA's IPR proceedings.

Respectfully submitted,

Dated: January 30, 2015       By:   s/ Daniel B. Moar

Daniel B. Moar
Christopher J. Belter
GOLDBERG SEGALLA, LLP
665 Main Street, Suite 400
Buffalo, NY 14203

Virginia L. Carron, *pro hac vice*
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
3500 SunTrust Plaza, 303 Peachtree Street, NE
Atlanta, GA 30308-3263

Thomas H. Jenkins, *pro hac vice*
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue NW
Washington, DC 20001-4413

*Attorneys for Defendant Nestlé USA, Inc.*