**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

STEUBEN FOODS, INC.,

               *Plaintiff,*

     v.

NESTLÉ USA, INC.,

               *Defendant.*

Case No. 1:13-cv-00892-WMS

**Defendant's Answer, Affirmative Defenses, Counterclaims, and Jury Demand**

---

## DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND

Defendant Nestlé USA, Inc. ("NUSA") by and through its undersigned counsel, answers the Complaint of Plaintiff Steuben Foods, Inc. ("Steuben" or "Plaintiff"), as follows:

1.    NUSA admits that the Complaint purports to be an action for patent infringement under Title 35 of the United States Code, but denies that it has committed any act of infringement.

### PARTIES

2.    NUSA is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2 and, thus, denies them.

3.    NUSA admits that it is a Delaware corporation, that it is registered to do business in the State of New York, and that it has a principal place of business at 800 North Brand Boulevard, Glendale, California 91203.

### JURISDICTION AND VENUE

4.    Paragraph 4 states a legal conclusion to which no response is required. To the extent a response is required, NUSA admits that this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.     Paragraph 5 states a legal conclusion to which no response is required.  NUSA admits that is does business in New York. NUSA denies the remaining allegations of paragraph 5.

6.     Paragraph 6 states a legal conclusion to which no response is required. To the extent a response is required, denied.

7.     Paragraph 7 states a legal conclusion to which no response is required. To the extent a response is required, denied.

8.     Paragraph 8 states a legal conclusion to which no response is required.  To the extent a response is required, denied.

## FACTUAL BACKGROUND

9.     NUSA admits that a copy of U.S. Patent No. 6,945,013 ("the '013 Patent") is attached to Plaintiff's Complaint as Exhibit A. NUSA denies the remaining allegations of paragraph 9.

10.     Denied.

11.     NUSA admits that a copy of U.S. Patent No. 6,536,188 ("the '188 Patent") is attached to Plaintiff's Complaint as Exhibit B. NUSA denies the remaining allegations of paragraph 11.

12.     Denied.

13.     NUSA admits that a copy of U.S. Patent No. 6,481,468 ("the '468 Patent") is attached to Plaintiff's Complaint as Exhibit C. NUSA denies the remaining allegations of paragraph 13.

14.     Denied.

15.     NUSA admits that a copy of U.S. Patent No. 6,475,435 ("the '435 Patent") is attached to Plaintiff's Complaint as Exhibit D. NUSA denies the remaining allegations of paragraph 15.

16.     Denied. Regarding the footnote to paragraph 16, NUSA admits that the '435 Patent is undergoing reexamination, but otherwise denies the allegations of the footnote to paragraph 16.

17.     NUSA admits that a copy of U.S. Patent No. 6,209,591 ("the '591 Patent") is attached to Plaintiff's Complaint as Exhibit E. NUSA denies the remaining allegations of paragraph 17.

18.     Denied.

19.     NUSA admits that paragraph 19 of Plaintiff's Complaint refers to the '013 Patent, the '188 Patent, the '468 Patent, the '435 Patent, and the '591 Patent collectively as the "Patents in Suit." NUSA denies the remaining allegations of paragraph 19.

20.     Denied.

21.     Denied.

22.     Denied.

23.     Denied.

24.     NUSA admits that a letter dated October 4, 2012, purportedly from Brian G. Manka of Steuben Foods, was addressed to Andy Murray, of NUSA, and attached a copy of a complaint alleging patent infringement by GEA Procomac S.p.A. NUSA denies the remaining allegations of paragraph 24.

25.     NUSA is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25 and, thus, denies them.

26.     Denied.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 6,945,013)

27.     NUSA repeats and incorporates by reference paragraphs 1 through 26 as if fully set forth herein.

28.     Denied.

29.     Denied.

30.     Denied.

31.     Denied.

32.     Denied.

33.     Denied.

<b>SECOND CAUSE OF ACTION<br>(INFRINGEMENT OF U.S. PATENT NO. 6,536,188)</b>

34.     NUSA repeats and incorporates by reference paragraphs 1 through 33 as if fully set forth herein.

35.     Denied.

36.     Denied.

37.     Denied.

38.     Denied.

39.     Denied.

40.     Denied.

<b>THIRD CAUSE OF ACTION<br>(INFRINGEMENT OF U.S. PATENT NO. 6,481,468)</b>

41.     NUSA repeats and incorporates by reference paragraphs 1 through 40 as if fully set forth herein.

42.     Denied.

43.     Denied.

44.     Denied.

45.     Denied.

46.     Denied.

47.     Denied.

## FOURTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 6,475,435)

48.     NUSA repeats and incorporates by reference paragraphs 1 through 47 as if fully set forth herein.

49.     Denied.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

## FIFTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 6,209,591)

55.     NUSA repeats and incorporates by reference paragraphs 1 through 54 as if fully set forth herein.

56.     Denied.

57.     Denied.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Denied.

## RESPONSE TO REQUEST FOR RELIEF

62.     NUSA denies that it infringes or has infringed any valid and enforceable claim of the Patents in Suit. NUSA denies all remaining allegations not specifically admitted herein. NUSA denies that Plaintiff is entitled to judgment or any of the relief set forth in its "REQUEST FOR RELIEF," including specifically subparagraphs 1-14.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE
### (Invalidity of U.S. Patent No. 6,945,013)

63. One or more claims of the '013 Patent are invalid for failure to comply with the conditions and requirements of patentability set forth in the United States Patent Laws Title 35 of the United States Code, including specifically and without limitation §§ 102, 103, 112, and the rules, regulations, and/or laws pertaining thereto.

### SECOND DEFENSE
### (Invalidity of U.S. Patent No. 6,536,188)

64. One or more claims of the '188 Patent are invalid for failure to comply with the conditions and requirements of patentability set forth in the United States Patent Laws Title 35 of the United States Code, including specifically and without limitation §§ 102, 103, 112, and the rules, regulations, and/or laws pertaining thereto.

### THIRD DEFENSE
### (Invalidity of U.S. Patent No. 6,481,468)

65. One or more claims of the '468 Patent are invalid for failure to comply with the conditions and requirements of patentability set forth in the United States Patent Laws Title 35 of the United States Code, including specifically and without limitation §§ 102, 103, 112, and the rules, regulations, and/or laws pertaining thereto.

### FOURTH DEFENSE
### (Invalidity of U.S. Patent No. 6,475,435)

66. One or more claims of the '435 Patent are invalid for failure to comply with the conditions and requirements of patentability set forth in the United States Patent Laws Title 35 of the United States Code, including specifically and without limitation §§ 102, 103, 112, and the rules, regulations, and/or laws pertaining thereto.

## FIFTH DEFENSE
### (Invalidity of U.S. Patent No. 6,209,591)

67.     One or more claims of the '591 Patent are invalid for failure to comply with the

conditions and requirements of patentability set forth in the United States Patent Laws Title 35 of the

United States Code, including specifically and without limitation §§ 102, 103, 112, and the rules,

regulations, and/or laws pertaining thereto.

## SIXTH DEFENSE
### (Prosecution History Estoppel)

68.     Plaintiff is estopped from asserting that any valid and enforceable claim of each of the

'013 Patent, the '188 Patent, the '468 Patent, the '435 Patent, and the '591 Patent is infringed by

NUSA, either literally or by application of the doctrine of equivalents, because of admissions,

amendments, arguments, and statements to the Patent Office during prosecution of the applications

leading to, or relating to, the issuance of each of the '013 Patent, the '188 Patent, the '468 Patent, the

'435 Patent, and the '591 Patent.

## SEVENTH DEFENSE
### (Laches)

69.     Plaintiff's purported claims for infringement are barred, in whole or in part, to the

extent that they allege acts of infringement barred by the doctrine of laches including its delay in

filing a suit.

## EIGHTH DEFENSE
### (Equitable Estoppel or Unclean Hands)

70.     Plaintiff's purported claims for infringement of each of the '013 Patent, the

'188 Patent, the '468 Patent, the '435 Patent, and the '591 Patent are barred by the doctrine of

equitable estoppel or unclean hands.

## NINTH DEFENSE
### (No Entitlement to an Injunction)

71.    Plaintiff is not entitled to injunctive relief in this action because *inter alia*: (1) NUSA has not infringed and is not infringing any claim of the '013 Patent, the '188 Patent, the '468 Patent, the '435 Patent, or the '591 Patent; (2) each of the '013 Patent, the '188 Patent, the '468 Patent, the '435 Patent, and the '591 Patent is invalid; (3) any purported injury to Plaintiff is neither immediate nor irreparable; (4) even if Plaintiff had suffered some injury (which it has not), there is an adequate remedy at law and monetary damages would be sufficient; (5) the public interest strongly disfavors an injunction under the circumstances; and (6) the balance of the hardships favors NUSA.

## TENTH DEFENSE
### (Unenforceability)

72.    At least one claim of the '013 Patent, as asserted by Plaintiff is unenforceable because the claims asserted in the Complaint have been relinquished in reexamination by the Plaintiff and/or rejected by the USPTO.

73.    At least one claim of the '188 Patent, as asserted by Plaintiff is unenforceable because the claims asserted in the Complaint have either been cancelled or amended by Plaintiff.

74.    At least one claim of the '468 Patent, as asserted by Plaintiff is unenforceable because the claims asserted in the Complaint have either been cancelled or amended by Plaintiff.

75.    At least one claim of the '591 Patent, as asserted by Plaintiff is unenforceable because the claims asserted in the Complaint have either been cancelled or amended by Plaintiff.

## ELEVENTH DEFENSE
### (Intervening Rights)

76.    NUSA has intervening rights in all claims of the '013 Patent, the '188 Patent, the '468 Patent, the '435 Patent, and the '591 Patent that were added or amended during based on reexamination.

## TWELFTH DEFENSE
### (Misuse)

77.     Plaintiff has attempted to assert claims of one or more of the '013 Patent, the '188 Patent, the '468 Patent, the '435 Patent, and the '591 Patent in its Complaint.

78.     Plaintiff's Complaint was filed September 3, 2013. The only claims identified in the exhibits to the Complaint are the original claims of each of the '013 Patent, the '188 Patent, the '468 Patent, the '435 Patent, and the '591 Patent.

79.     Claims 1 and 4-20 of the '013 Patent were determined to be reasonably likely unpatentable in an institution decision in IPR2014-00041.

80.     Plaintiff filed a motion to amend claims 10, 18, and 19 of the '013 Patent in IPR2014-00041. The amendments were material to the claims. Plaintiff thereby tacitly acknowledged the invalidity of those claims.

81.     Claims 18-20 of the '013 Patent were determined to be reasonably likely unpatentable in an institution decision in IPR2014-01235.

82.     Plaintiff canceled claims 1-8, 10-15, 17, 18, and 20 and materially amended claim 16 of the '188 Patent during reexamination. These claims were cancelled or amended before the filing of Plaintiff's Complaint.

83.     Claim 40 of the '188 Patent was determined to be reasonably likely unpatentable in an institution decision in IPR2014-00055.

84.     Plaintiff amended claims 1, 11, 12, 23, and 35 of the '468 Patent during reexamination proceedings.

85.     Claims 1-27 and 32-35 of the '468 Patent were determined to be reasonably likely unpatentable in an institution decision in IPR2014-00054.

86. Claims 1-37 of the '435 Patent were determined to be reasonably likely unpatentable in an institution decision in IPR2014-00043.

87. Plaintiff materially amended claims 1, 3, 16, 22, 24, and 26 of the '591 Patent during reexamination. Claims 1, 3, 16, 22, 24, and 26 are the only independent claims of the '591 Patent prior to reexamination. Amendments to the independent claims also amend all dependent claims.

88. The amendments to claims 1, 3, 16, 22, 24, and 26 of the '591 Patent were filed within one week of Plaintiff filing its Complaint against NUSA. On information and belief, Plaintiff knew prior to filing its Complaint against NUSA that it would amend these claims.

89. Plaintiff's assertion of original claims that have been cancelled or amended creates an anticompetitive effect. The threat of litigation has a chilling effect on the market for bottle filling machines and aseptic bottling generally, thereby inhibiting NUSA's ability to obtain processing machines and/or secure contracts with others to provide aseptically bottled products, which it is legally allowed to obtain and/or to practice methods which it is legally allowed to practice. Plaintiff has asserted and continues to assert claims that Plaintiff has no objective basis to believe are valid, infringed, and not subject to NUSA's intervening rights.

90. Plaintiff's assertions also impermissibly broaden the scope of one or more of the '013 Patent, the '188 Patent, the '468 Patent, the '435 Patent, and the '591 Patent, and attempt to unlawfully restrain trade by asserting claims that are not enforceable because they have been canceled or amended.

## COUNTERCLAIMS

91. NUSA asserts the following counterclaims against Plaintiff and alleges as follows:

92. NUSA asserts a declaratory judgment counterclaim for a declaration of noninfringement and invalidity of all claims of U.S. Patent Nos. 6,945,013 ("the '013 Patent"), 6,536,188 ("the '188 Patent"), 6,481,468 ("the '468 Patent"), 6,475,435 ("the '435 Patent"), and

6,209,591 ("the '591 Patent") (collectively "the Patents in Suit") under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the Patent Laws of the United States, 35 U.S.C. § 1 et seq.

93.     NUSA asserts a counterclaim of antitrust violations under Section 2 of the Sherman Act, 15 U.S.C. § 2.

94.     NUSA asserts a counterclaim of tortious interference with prospective business relationship and/or prospective economic advantage under New York law.

## PARTIES

95.     NUSA is a Delaware corporation with its principal place of business at 800 North Brand Boulevard, Glendale, California 91203.

96.     On information and belief, as stated in Plaintiff's Complaint, Steuben Foods, Inc., is a New York corporation having a principal place of business at 1150 Maple Road, Elma, New York 14059.

## JURISDICTION AND VENUE

97.     Counterclaim Counts 1-11 arise under the Federal Declaratory Judgment Act, the Sherman Act, and the Patent Laws of the United States, more particularly under 28 U.S.C. §§ 2201 and 2202, 15 U.S.C. § 2, and the 35 U.S.C. § 100 et seq., respectively. This court has subject matter jurisdiction over such claims under, without limitation, 28 U.S.C. §§ 1331, 1337(a), 1338(a), and 2201.

98.     This court has supplemental jurisdiction over Counterclaim Count 12 under 28 U.S.C. § 1367. This court also has jurisdiction over Counterclaim Count 12 under 28 U.S.C. § 1332 because complete diversity exists and the amount in controversy exceeds $75,000 exclusive of interest and costs.

99.     There is an actual controversy between NUSA and Plaintiff regarding the validity and infringement of the Patents in Suit as evidenced by, for example, Plaintiff's assertion in the

Complaint that NUSA infringes the Patents in Suit and NUSA's denial of those assertions, and as to Plaintiff's anticompetitive and unlawful behavior in violation of the Sherman Act.

100. Plaintiff is subject to personal jurisdiction in this Court as evidenced by, *inter alia*, its consent to jurisdiction in this Court.

101. Venue in this judicial district is proper pursuant to 28 U.S.C. §§ 1391 and 1400 and 15 U.S.C. §§ 15 or 22.

### COUNT ONE
### (Declaratory Judgment – Noninfringement of U.S. Patent No. 6,945,013)

102. NUSA repeats and incorporates by reference paragraphs 1 through 101 of these Counterclaims as if fully set forth herein.

103. Plaintiff has accused NUSA of infringing the '013 Patent.

104. Plaintiff has created an actual and justiciable controversy between itself and NUSA regarding whether NUSA has infringed any valid and enforceable claim of the '013 Patent.

105. NUSA has not infringed or actively induced others to infringe any claim of the '013 Patent, either literally or under the doctrine of equivalents.

106. A judicial declaration of noninfringement of the '013 Patent is necessary and appropriate to resolve this controversy.

### COUNT TWO
### (Declaratory Judgment – Invalidity of U.S. Patent No. 6,945,013)

107. NUSA repeats the allegations of paragraphs 1 through 106 of these Counterclaims as if fully set forth herein.

108. An actual controversy exists between NUSA and Plaintiff as to whether the '013 Patent is valid.

109. Each of the claims of the '013 Patent are invalid for failure to comply with one or more requirements of patentability under 35 U.S.C. § 101, et seq., including but not limited to the requirements in §§ 102, 103, 112, and the rules, regulations, and/or the laws pertaining thereto.

110. A judicial declaration of invalidity of the '013 Patent is necessary and appropriate to resolve this controversy.

## COUNT THREE
### (Declaratory Judgment – Noninfringement of U.S. Patent No. 6,536,188)

111. NUSA repeats and incorporates by reference paragraphs 1 through 110 of these Counterclaims as if fully set forth herein.

112. Plaintiff has accused NUSA of infringing the '188 Patent.

113. Plaintiff has created an actual and justiciable controversy between itself and NUSA regarding whether NUSA has infringed any valid and enforceable claim of the '188 Patent.

114. NUSA has not infringed or actively induced others to infringe any claim of the '188 Patent, either literally or under the doctrine of equivalents.

115. A judicial declaration of noninfringement of the '188 Patent is necessary and appropriate to resolve this controversy.

## COUNT FOUR
### (Declaratory Judgment – Invalidity of U.S. Patent No. 6,536,188)

116. NUSA repeats the allegations of paragraphs 1 through 115 of these Counterclaims as if fully set forth herein.

117. An actual controversy exists between NUSA and Plaintiff as to whether the '188 Patent is valid.

118. Each of the claims of the '188 Patent are invalid for failure to comply with one or more requirements of patentability under 35 U.S.C. § 101, et seq., including but not limited to the requirements in §§ 102, 103, 112, and the rules, regulations, and/or the laws pertaining thereto.

119.     A judicial declaration of invalidity of the '188 Patent is necessary and appropriate to resolve this controversy.

## COUNT FIVE
### (Declaratory Judgment – Noninfringement of U.S. Patent No. 6,481,468)

120.     NUSA repeats and incorporates by reference paragraphs 1 through 119 of these Counterclaims as if fully set forth herein.

121.     Plaintiff has accused NUSA of infringing the '468 Patent.

122.     Plaintiff has created an actual and justiciable controversy between itself and NUSA regarding whether NUSA has infringed any valid and enforceable claim of the '468 Patent.

123.     NUSA has not infringed or actively induced others to infringe any claim of the '468 Patent, either literally or under the doctrine of equivalents.

124.     A judicial declaration of noninfringement of the '468 Patent is necessary and appropriate to resolve this controversy.

## COUNT SIX
### (Declaratory Judgment – Invalidity of U.S. Patent No. 6,481,468)

125.     NUSA repeats the allegations of paragraphs 1 through 124 of these Counterclaims as if fully set forth herein.

126.     An actual controversy exists between NUSA and Plaintiff as to whether the '468 Patent is valid.

127.     Each of the claims of the '468 Patent are invalid for failure to comply with one or more requirements of patentability under 35 U.S.C. § 101, et seq., including but not limited to the requirements in §§ 102, 103, 112, and the rules, regulations, and/or the laws pertaining thereto.

128.     A judicial declaration of invalidity of the '468 Patent is necessary and appropriate to resolve this controversy.

## COUNT SEVEN
### (Declaratory Judgment – Noninfringement of U.S. Patent No. 6,475,435)

129.     NUSA repeats and incorporates by reference paragraphs 1 through 128 of these Counterclaims as if fully set forth herein.

130.     Plaintiff has accused NUSA of infringing the '435 Patent.

131.     Plaintiff has created an actual and justiciable controversy between itself and NUSA regarding whether NUSA has infringed any valid and enforceable claim of the '435 Patent.

132.     NUSA has not infringed or actively induced others to infringe any claim of the '435 Patent, either literally or under the doctrine of equivalents.

133.     A judicial declaration of noninfringement of the '435 Patent is necessary and appropriate to resolve this controversy.

## COUNT EIGHT
### (Declaratory Judgment – Invalidity of U.S. Patent No. 6,475,435)

134.     NUSA repeats the allegations of paragraphs 1 through 133 of these Counterclaims as if fully set forth herein.

135.     An actual controversy exists between NUSA and Plaintiff as to whether the '435 Patent is valid.

136.     Each of the claims of the '435 Patent are invalid for failure to comply with one or more requirements of patentability under 35 U.S.C. § 101, et seq., including but not limited to the requirements in §§ 102, 103, 112, and the rules, regulations, and/or the laws pertaining thereto.

137.     A judicial declaration of invalidity of the '435 Patent is necessary and appropriate to resolve this controversy.

## COUNT NINE
### (Declaratory Judgment – Noninfringement of U.S. Patent No. 6,209,591)

138.　NUSA repeats and incorporates by reference paragraphs 1 through 137 of these Counterclaims as if fully set forth herein.

139.　Plaintiff has accused NUSA of infringing the '591 Patent.

140.　Plaintiff has created an actual and justiciable controversy between itself and NUSA regarding whether NUSA has infringed any valid and enforceable claim of the '591 Patent.

141.　NUSA has not infringed or actively induced others to infringe any claim of the '591 Patent, either literally or under the doctrine of equivalents.

142.　A judicial declaration of noninfringement of the '591 Patent is necessary and appropriate to resolve this controversy.

## COUNT TEN
### (Declaratory Judgment – Invalidity of U.S. Patent No. 6,209,591)

143.　NUSA repeats the allegations of paragraphs 1 through 142 of these Counterclaims as if fully set forth herein.

144.　An actual controversy exists between NUSA and Plaintiff as to whether the '591 Patent is valid.

145.　Each of the claims of the '591 Patent are invalid for failure to comply with one or more requirements of patentability under 35 U.S.C. § 101, et seq., including but not limited to the requirements in §§ 102, 103, 112, and the rules, regulations, and/or the laws pertaining thereto.

146.　A judicial declaration of invalidity of the '591 Patent is necessary and appropriate to resolve this controversy.

## COUNT ELEVEN
### (Antitrust Violation under Section 2 of the Sherman Act)

147.     NUSA repeats the allegations of paragraphs 1 through 146 of these Counterclaims as if fully set forth herein.

148.     Since 2008, NUSA has had a contract with Plaintiff for Plaintiff to provide certain limited "co-packing" aseptic bottling services for NUSA. Through that contract, NUSA engaged Plaintiff to aseptically fill certain Nestlé foodstuffs into Nestlé bottles at Plaintiff's New York bottling facility. NUSA's contract with Plaintiff is currently scheduled to expire in 2017.

149.     In 2006, NUSA announced plans to develop an aseptic bottling facility in Anderson, Indiana, at which NUSA would perform its own aseptic bottling. NUSA's announcement was public and, thus, on information and belief, known to Plaintiff.

150.     By 2008, NUSA had installed five aseptic bottling lines supplied by GEA at the Anderson facility, and by October 2008, NUSA's purchase of a sixth GEA aseptic bottling line was publicly announced. Thus, on information and belief, Plaintiff knew that NUSA had built its Anderson facility to accommodate GEA's machines.

151.     At least by September 2012, it was publicly known that NUSA planned to expand the Anderson facility using additional machines supplied by GEA. Thus, on information and belief, by that date, Plaintiff knew that NUSA planned to expand the Anderson facility using additional machines supplied by GEA.

152.     Plaintiff knew that NUSA's continued expansion of the Anderson plant would likely reduce or eliminate NUSA's reliance on Plaintiff's co-packing services. On information and belief, Plaintiff sought to disrupt NUSA's operation of its aseptic bottling facility, and sought to prevent or otherwise interfere with NUSA's planned expansion. On information and belief, Plaintiff understood

17

that NUSA's aseptic bottling facility would have afforded NUSA the economic advantage of being able to bottle its own product without Plaintiff's involvement.

153. Plaintiff filed suit against GEA in September 2012, alleging that the machines supplied by GEA infringed five separate patents belonging to Plaintiff—i.e., the same five patents Plaintiff now asserts in its Complaint against NUSA.

154. On information and belief, Plaintiff filed suit against GEA not to vindicate any legitimate patent right, but rather to force NUSA to continue and expand upon a prior agreement under which Plaintiff had been supplying NUSA with bottle-filling services. Plaintiff's objectives are apparent from the timing of its suit against GEA, as well as Plaintiff's communications to NUSA about the GEA suit. Specifically, in October 2012, Steuben sent NUSA a copy of the GEA complaint in a letter regarding "ongoing discussions between Nestlé USA, Inc. ('Nestlé') and Steuben Foods, Inc. ('Steuben') in relation to the possibility of a business and/or license arrangement."

155. Plaintiff's unlawful litigation objectives are apparent from its efforts between about September 2012 and November 2012 to leverage its patent rights far beyond the limited grant that the patent laws allow. Plaintiff demanded, e.g., that NUSA (1) construct a new bottling facility for Plaintiff, at NUSA's expense *of nearly $70 million*, and (2) agree to a *twenty-five year* commitment to purchase bottling services from Steuben.

156. Plaintiff's unlawful objectives also are apparent from Plaintiff's delay in accusing NUSA's GEA machines of infringing the patents until it recognized the coercive effect that such accusations might have in Plaintiff's negotiations with NUSA. Plaintiff first began asserting its patents in 2010 against two manufacturers whose machines, like the machines described in Plaintiff's patents, use *hydrogen peroxide* as a bottle sterilant. *See Steuben Foods, Inc. v. Oystar USA, Inc.*, No. 1:10-cv-780; *Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, No. 1:10-cv-781. Plaintiff waited to sue GEA

(and later NUSA) for *years*, likely because Plaintiff understood that its patents were not directed machines using a fundamentally different *peroxyacetic acid* bottle sterilant, as GEA's machines do. Only in 2012, when Steuben sought to pressure NUSA into expanding the parties' relationship, did Steuben determine to file suit against GEA based on its baseless claims of infringement. Tellingly, in the same time period, Steuben began amending its patent claims in an effort to cover GEA's peroxyacetic acid system, which is an implicit recognition that its existing patent claims did *not* cover that machine. (*See* ¶¶ 171-172, *infra*.)

157.     At least since Plaintiff first filed its suit against GEA, it has become apparent that Plaintiff has no objectively reasonable or good-faith basis on which to assert its patents—whether against GEA or NUSA. As detailed in the counts below, Plaintiff's filing and continued assertion of its suits against GEA and NUSA (among others) are anticompetitive, tortious and wrongful.

**A.     The Relevant Market**

158.     There is a market in the United States for aseptically bottling food products.

**B.     Plaintiff's Attempted Monopoly**

159.     Plaintiff has attempted to monopolize the market for aseptically bottling food products within the United States by asserting one or more of its patents to cover all commercially feasible methods of aseptically bottling food products and all commercially feasible aseptic bottling machines, and by seeking to enjoin the sale of such aseptic bottling machines.

160.     There is a dangerous probability that Plaintiff's anticompetitive and/or exclusionary conduct, described below, will succeed in unfairly increasing Plaintiff's market power, including to the point of interfering with NUSA's business position and relationships, and creating an anticompetitive monopoly, at least because Plaintiff asserts the Patents in Suit in a manner that would cover all commercially feasible FDA-compliant aseptic bottling methods in the United States.

### C. Plaintiff's Anticompetitive and/or Exclusionary Conduct

161. Plaintiff has engaged in anticompetitive and/or exclusionary conduct via sham patent litigation, asserting objectively baseless patent-infringement claims.

162. Plaintiff's Complaint is objectively baseless in that no reasonable plaintiff could reasonably expect to succeed on allegations that NUSA infringes, without intervening rights, any valid claim of the Patents in Suit.

#### 1. Sham Assertion of the '188 Patent

*Extant claims: claims 9, 16, 19, and 21-40*

163. An *ex parte* reexamination certificate for the '188 Patent issued on September 12, 2013. In the *ex parte* reexamination certificate, claims 1-8, 10-15, 17, 18, and 20 were canceled, claim 16 was amended, and new claims 21-40 were added. Thus, claims 9, 16, 19, and 21-40 are the only currently extant claims of the '188 Patent.

164. On information and belief, Plaintiff has asserted, and continues to assert, at least claims 19, 21-32, 39, and 40 of the '188 Patent in its co-pending infringement suit against GEA Procomac ("GEA"), the supplier of NUSA's accused machines.

*Intervening rights as to claims 16 and 21-40*

165. Plaintiff materially amended claim 16 during reexamination of the '188 Patent.

166. Plaintiff newly added claims 21-40 of the '188 Patent.

167. NUSA has intervening rights as to claims 16 and 21-40 of the '188 Patent.

168. On information and belief, Plaintiff knew, prior to filing its Complaint, that NUSA would have intervening rights as to any claims added or amended in reexamination, because NUSA's accused machines and NUSA's use of those machines predated the issuance of a reexamination certificate.

*No basis to believe that claim 40 is valid*

169.     Plaintiff knows that the United States Patent and Trademark Office (USPTO) Patent Trial and Appeal Board (PTAB), has determined in an institution decision for *inter partes* review that claim 40 of the '188 Patent is reasonably likely unpatentable.

170.     Based at least on the USPTO PTAB's determination that claim 40 of the '188 Patent is reasonably likely unpatentable, no reasonable plaintiff could reasonably expect to succeed on allegations that NUSA infringes claim 40.

171.     During reexamination of the '188 Patent, on or about December 17, 2012, Steuben submitted an amendment to add new claim 68, which included the limitation, "wherein the peroxyacetic acid and hydrogen peroxide uses a concentration sensor to ensure that the concentration of the peroxyacetic acid and hydrogen peroxide is maintained at a predetermined level." Reexamination claim 68 ultimately issued in a reexamination certificate as claim 40 of the '188 Patent.

172.     During reexamination of the '468 Patent, on or about January 14, 2013, Steuben submitted an amendment to add new claim 41, which included the limitation, "wherein the peroxyacetic acid uses a concentration sensor to ensure that the concentration of the peroxyacetic acid is maintained at a predetermined level."

173.     During reexamination of the '468 Patent, on or about February 13, 2013, Shibuya, the third-party requester of the reexamination, argued that claim 41 lacked enablement and written description, and was indefinite under 35 U.S.C. § 112. As to indefiniteness, Shibuya specifically argued that "[a]s phrased, the acid is using a sensor as opposed to the system using a sensor or a sensor being used to monitor the concentration. As written, the claim is per se indefinite under 35 U.S. C. § 112 ¶ 2."

174. On or about April 23, 2013, Examiner Dawson, the reexamination examiner of the '188 Patent, issued an action allowing new claim 68. Examiner Dawson's April 23 action did not address whether claim 68 was indefinite under 35 U.S.C. § 112.

175. Plaintiff did not inform Examiner Dawson of Shibuya's arguments about claim 41 of the '468 Patent. The '468 Patent reexamination was assigned to a different examiner, Examiner Engle.

176. On or about July 3, 2014, Examiner Engle rejected new claim 41 of the '468 Patent as lacking enablement, lacking written description, and as being indefinite under 35 U.S.C. § 112. As to indefiniteness, Examiner Engle found claim 41 unpatentable because, "[a]s phrased, the acid is using a sensor as opposed to the system using a sensor or a sensor being used to monitor the concentration."

177. On or about August 4, 2014, in response to the indefiniteness rejection, Plaintiff requested to cancel claim 41 of the '468 Patent.

178. In its August 4, 2014, response, Plaintiff did not argue that claim 41 of the '468 Patent was definite.

179. At no point in the reexamination of the '468 Patent did Plaintiff dispute the PTO examiner's indefiniteness rejection of claim 41.

180. The PTO refused to grant Plaintiff's request to cancel claim 41 of the '468 Patent.

181. Because claim 41 was not canceled during reexamination, the rejection of claim 41 remained in place after the close of reexamination prosecution.

182. On or about December 16, 2014, Plaintiff filed an appeal brief on appeal from the reexamination of the '468 Patent. Plaintiff acknowledged the PTO's refusal to cancel claim 41, but Plaintiff declined to appeal the rejection of claim 41.

183. On or about March 6, 2015, Shibuya filed a response brief on appeal from the reexamination of the '468 Patent. Shibuya pointed out that Plaintiff's reexamination appeal brief did

not identify claim 41 as an issue to be addressed on appeal, and that the rejection of claim 41 should thus be affirmed *pro forma*.

184.    Claim 40 of the '188 Patent suffers from the same indefiniteness defect as claim 41 of the reexamined '468 Patent—i.e., "[a]s phrased, the acid [and peroxide] is using a sensor as opposed to the system using a sensor or a sensor being used to monitor the concentration," making the claim indefinite *per se*.

185.    Based at least on (a) Shibuya's February 13, 2013, submission in the '468 Patent reexamination, (b) Examiner Engle's July 3, 2014, rejection of claim 41 of the '468 Patent, (c) Plaintiff's decision on or about August 14, 2014, not to dispute the indefiniteness rejection of claim 41, (d) Plaintiff's decision on or about December 16, 2014, not to appeal the indefiniteness rejection of claim 41, and (e) Shibuya's recognition in its appeal brief that the indefiniteness rejection of claim 41 is not appealed, Plaintiff knows that claim 40 of the '188 Patent is indefinite for its recitation of "wherein the peroxyacetic acid and hydrogen peroxide uses a concentration sensor to ensure that the concentration of the peroxyacetic acid and hydrogen peroxide is maintained at a predetermined level."

186.    Based at least on (a) Shibuya's February 13, 2013, submission in the '468 Patent reexamination, (b) Examiner Engle's July 3, 2014, rejection of claim 41, (c) Plaintiff's decision on or about August 14, 2014, not to dispute the indefiniteness rejection of claim 41, (d) Plaintiff's decision on or about December 16, 2014, not to appeal the indefiniteness rejection of claim 41, and (e) Shibuya's recognition in its appeal brief that the indefiniteness rejection of claim 41 is not appealed, no reasonable plaintiff could reasonably expect to succeed on allegations that NUSA infringes claim 40.

187.    Steuben is estopped from arguing that claim 40 of the '188 Patent is not indefinite under 35 U.S.C. § 112.

188.    Steuben is barred under *res judicata* from arguing that claim 40 of the '188 Patent is not indefinite under 35 U.S.C. § 112.

189.    Because Steuben is estopped and barred from arguing that claim 40 is not indefinite under 35 U.S.C. § 112, no reasonable plaintiff in Steuben's position could reasonably expect to succeed on allegations that NUSA infringes claim 40.

*No basis to allege infringement of any claim of the '188 Patent*

190.    Every extant claim of the '188 Patent requires "aseptically disinfecting."

191.    Plaintiff has taken the position before the USPTO that "aseptically disinfecting" requires using a sterilant approved by the FDA at the time of filing of Plaintiff's patent applications.

192.    In particular, during the reexamination of the '013 Patent, Plaintiff sought to distinguish its claimed invention over a reference using chlorinated water to sterilize containers prior to filling by arguing that "[a]t the time the application that matured into the '013 Patent was filed, the only FDA approved sterilant for use in low acid packaging was hydrogen peroxide, as such chlorine could not have been used in [the] aseptic packaging system as claimed by the '013 Patent."

193.    NUSA's accused machines use peroxyacetic acid to sterilize bottles before filling.

194.    At the time of filing of Plaintiff's patent applications, peroxyacetic acid was not approved by the FDA for aseptically disinfecting bottles for food packaging purposes.

195.    Under Plaintiff's own interpretation of "aseptically disinfecting," NUSA cannot infringe any claim of the '188 Patent, because NUSA's sterilant was not FDA-approved at the time of filing of Plaintiff's patent applications.

196.    Furthermore, under Plaintiff's own interpretation of "aseptically disinfecting," claim 40 of the '188 Patent is indefinite, lacks enabling disclosure in the specification, and/or lacks

24

written description in the specification, because the recited "sterilant [that] is peroxyacetic acid and hydrogen peroxide" was not FDA-approved when the application for the '188 Patent was filed. In other words, under Plaintiff's interpretation of "aseptically disinfecting," claim 40 is inherently and irreconcilably indefinite because it both requires that the sterilant be FDA-approved *and* that the sterilant be a particular sterilant that was *not* FDA approved.

*No basis to allege infringement of claims 9, 16, 19, and 21-39*

197. On information and belief, Plaintiff knew, prior to filing its Complaint, that it had no basis to allege that NUSA infringes claims 9 or 16 of the '188 Patent, at least based on Plaintiff's apparent decision not to assert those claims against GEA.

198. On information and belief, Plaintiff knows that NUSA's accused machines lack the limitation of an "application of the hot hydrogen peroxide spray for about 1 second and the activation and removal of the hot hydrogen peroxide using hot aseptically sterilized air for about 24 seconds," as is required by claim 9 of the '188 Patent.

199. On information and belief, Plaintiff knows that NUSA's accused machines lack the limitation of "about 1 second for the application of the hot hydrogen peroxide spray and about 24 seconds for the activation and removal of the hot hydrogen peroxide using hot aseptically sterilized air," as is required by claim 16 of the '188 Patent.

200. On information and belief, Plaintiff knew, prior to filing its Complaint, that it had no basis to allege that NUSA's accused machines include the means-plus-function limitations of claim 19, at least based on Plaintiff's discovery of information about the accused machines from GEA.

201. On April 23, 2014, during USPTO reexamination of the '188 Patent, the USPTO examiner issued an office action, which confirmed the patentability of claim 19 on the basis that "the prior art fails to teach or fairly suggest the means for aseptically disinfecting the bottles and the means for filling the bottles at a rate greater than 100 bottles per minute."

202.     In confirming the patentability of claim 19, the USPTO reexamination examiner expressly construed "the means for aseptically disinfecting the bottles" as requiring "two separate structural devices or elements, one which acts to sterilize the outer surfaces of the bottle followed by activation and drying stations, and a 2nd separate one which after outer bottle sterilization sterilizes the interior of the bottles followed by activation and drying stations; a metering device which meters the amount of sterilant applied to each bottle; and a control system which monitors and controls the spray apparatus."

203.     In confirming the patentability of claim 19, the USPTO reexamination examiner expressly construed "the means for filling the bottles at a rate greater than 100 bottles per minute" as requiring "a control system for calculating the desired product volume and controlling the product volume; a single filler apparatus; and a conveyor system which indexes a 2 x 6 matrix of bottles through the various stations at such a speed that over 100 bottles are filled/minute."

204.     On or about June 24, 2013, Plaintiff responded to the USPTO's April 23 office action and requested a reexamination certificate to be issued on the confirmed claims, including claim 19.

205.     In its June 24 response to office action, Plaintiff did not contest or dispute the claim construction on which the USPTO reexamination examiner based his confirmation of claim 19 as patentable over the prior art.

206.     At no point during the reexamination of the '013 Patent did Plaintiff contest or dispute the claim construction on which the USPTO reexamination examiner based his confirmation of claim 19 as patentable over the prior art.

207.     Claim 19 requires at least a first structural device or element, which acts to sterilize the outer surfaces of the bottle followed by activation and drying stations.

208.     On information and belief, before filing its Complaint, Plaintiff knew that claim 19 requires at least a structural device or element, which acts to sterilize the outer surfaces of the bottle followed by activation and drying stations. Plaintiff had such knowledge at least from the confirmation of claim 19 during reexamination based specifically on that construction.

209.     NUSA's accused machines literally lack the structural device or element identified in paragraph 207 above.

210.     NUSA's accused machines lack an equivalent of the structural device or element identified in paragraph 207.

211.     On information and belief, before filing its Complaint, Plaintiff knew that NUSA's accused machines literally lack the structural device or element identified in paragraph 207 above. Plaintiff had such knowledge at least based on Plaintiff's discovery of information about the accused machines from GEA.

212.     On information and belief, before filing its Complaint, Plaintiff knew that NUSA's accused machines lack an equivalent of the structural device or element identified in paragraph 207. Plaintiff had such knowledge at least based on Plaintiff's discovery of information about the accused machines from GEA.

213.     Claim 19 requires at least a second structural device or element (separate from the structural device or element identified above in paragraph 207), which, after outer bottle sterilization, sterilizes the interior of the bottles followed by activation and drying stations.

214.     On information and belief, before filing its Complaint, Plaintiff knew that claim 19 requires at least a second structural device or element (separate from the structural device or element identified above in paragraph 207), which, after outer bottle sterilization, sterilizes the interior of the

bottles followed by activation and drying stations. Plaintiff had such knowledge at least from the confirmation of claim 19 during reexamination based specifically on that construction.

215.    NUSA's accused machines literally lack the structural device or element identified in paragraph 213 above.

216.    NUSA's accused machines lack an equivalent of the structural device or element identified in paragraph 213 above.

217.    On information and belief, before filing its Complaint, Plaintiff knew that NUSA's accused machines literally lack the structural device or element identified in paragraph 213 above. Plaintiff had such knowledge at least based on Plaintiff's discovery of information about the accused machines from GEA.

218.    On information and belief, before filing its Complaint, Plaintiff knew that NUSA's accused machines lack an equivalent of the structural device or element identified in paragraph 213 above. Plaintiff had such knowledge at least based on Plaintiff's discovery of information about the accused machines from GEA.

219.    Claim 19 requires at least a metering device, which meters the amount of sterilant applied to each bottle.

220.    On information and belief, before filing its Complaint, Plaintiff knew that claim 19 requires at least a metering device, which meters the amount of sterilant applied to each bottle. Plaintiff had such knowledge at least from the confirmation of claim 19 during reexamination based specifically on that construction.

221.    NUSA's accused machines literally lack the metering device identified in paragraph 219 above.

222.     NUSA's accused machines lack an equivalent of the metering device identified in paragraph 219 above.

223.     On information and belief, before filing its Complaint, Plaintiff knew that NUSA's accused machines literally lack the metering device identified in paragraph 219 above. Plaintiff had such knowledge at least based on Plaintiff's discovery of information about the accused machines from GEA.

224.     On information and belief, before filing its Complaint, Plaintiff knew that NUSA's accused machines lack an equivalent of the metering device identified in paragraph 219 above. Plaintiff had such knowledge at least based on Plaintiff's discovery of information about the accused machines from GEA.

225.     Claim 19 requires at least "a control system for calculating the desired product volume and controlling the product volume."

226.     On information and belief, before filing its Complaint, Plaintiff knew that claim 19 requires at least "a control system for calculating the desired product volume and controlling the product volume." Plaintiff had such knowledge at least from the confirmation of claim 19 during reexamination based specifically on that construction.

227.     NUSA's accused machines literally lack the control system identified in paragraph 225 above.

228.     NUSA's accused machines lack an equivalent of the control system identified in paragraph 225 above.

229.     On information and belief, before filing its Complaint, Plaintiff knew that NUSA's accused machines literally lack the control system identified in paragraph 225 above. Plaintiff had

such knowledge at least based on Plaintiff's discovery of information about the accused machines from GEA.

230. On information and belief, before filing its Complaint, Plaintiff knew that NUSA's accused machines lack an equivalent of the control system identified in paragraph 225 above. Plaintiff had such knowledge at least based on Plaintiff's discovery of information about the accused machines from GEA.

231. Claim 19 requires at least "a conveyor system which indexes a 2 x 6 matrix of bottles through the various stations at such a speed that over 100 bottles are filled/minute."

232. On information and belief, before filing its Complaint, Plaintiff knew that claim 19 requires at least "a conveyor system which indexes a 2 x 6 matrix of bottles through the various stations at such a speed that over 100 bottles are filled/minute." Plaintiff had such knowledge at least from the confirmation of claim 19 during reexamination based specifically on that construction.

233. NUSA's accused machines literally lack the conveyor system identified in paragraph 231 above.

234. NUSA's accused machines lack an equivalent of the conveyor system identified in paragraph 231 above.

235. On information and belief, before filing its Complaint, Plaintiff knew that NUSA's accused machines literally lack the conveyor system identified in paragraph 231 above. Plaintiff had such knowledge at least based on Plaintiff's discovery of information about the accused machines from GEA.

236. On information and belief, before filing its Complaint, Plaintiff knew that NUSA's accused machines lack an equivalent of the conveyor system identified in paragraph 231 above.

Plaintiff had such knowledge at least based on Plaintiff's discovery of information about the accused machines from GEA.

237. Each of new claims 21-39 of the '188 Patent, as issued in the reexamination certificate, requires a "means for aseptically disinfecting [a] plurality of bottles."

238. Each of new claims 21-39 of the '188 Patent requires at least the features identified above in paragraphs 207, 213, 219, and 225.

239. Each of new claims 21-39 of the '188 Patent, as issued in the reexamination certificate, requires a "means for filling the aseptically disinfected plurality of bottles at a rate greater than 100 bottles per minute."

240. Each of new claims 21-39 of the '188 Patent requires at least the features identified above in paragraph 231.

241. NUSA's accused machines literally lack at least the "means for aseptically disinfecting [a] plurality of bottles," as recited in each of claims 21-39.

242. NUSA's accused machines lack an equivalent of the "means for aseptically disinfecting [a] plurality of bottles," as recited in each of claims 21-39, under the doctrine of equivalents.

243. NUSA's accused machines literally lack at least the "means for filling the aseptically disinfected plurality of bottles at a rate greater than 100 bottles per minute," as recited in each of claims 21-39.

244. NUSA's accused machines lack an equivalent of the "means for filling the aseptically disinfected plurality of bottles at a rate greater than 100 bottles per minute," as recited in each of claims 21-39, under the doctrine of equivalents.

245.     On information and belief, Plaintiff knew, prior to filing its Complaint, that it had no basis to allege that NUSA's accused machines include all of the means-plus-function limitations of each of new claims 21-39, at least based on Plaintiff's discovery of information about the accused machines from GEA.

246.     On information and belief, before filing its Complaint, Plaintiff knew that new claims 21-39 of the '188 Patent—each of which recites means-plus-function limitations similar to those recited in claim 19—require one or more elements that NUSA's accused machines lack. Plaintiff had such knowledge at least from the confirmation of claims 21-39 during reexamination and from Plaintiff's discovery of information about the accused machines from GEA.

*No reasonably objective basis for Plaintiff to believe that it would prevail on any claim of the '188 Patent*

247.     On information and belief, Plaintiff continues to assert at least one of claims 19, 21-32, 39, and 40 of the '188 Patent, which it knows NUSA does not infringe.

248.     On information and belief, Plaintiff continues to assert at least one of claims 21-32, 39, and 40 of the '188 Patent, which it knows cannot be enforced against NUSA due to NUSA's intervening rights.

249.     On information and belief, Plaintiff continues to assert at least claim 40 of the '188 Patent, which it knows to be invalid, whether based on the prior art, written description, enablement, or indefiniteness.

250.     Because Plaintiff could not prevail against NUSA, and knew that it could not prevail against NUSA, on any claim of the '188 Patent, Plaintiff's assertion of infringement of the '188 Patent is objectively baseless.

### 2.     Sham Assertion of the '013 Patent

251.     Claims 1-20 are the only issued claims of the '013 Patent.

252.     On information and belief, Plaintiff has asserted, and continues to assert, at least claims 18-20 in its co-pending infringement suit against GEA.

*No basis to believe that claims 18-20 are valid*

253.     At the time Plaintiff filed its Complaint against NUSA, Plaintiff knew that claims 1 and 4-20 of the '013 Patent were rejected by the USPTO in *inter partes* reexamination.

254.     Claims 1 and 4-20 of the '013 Patent are currently rejected in an action closing prosecution and right-of-appeal notice of the reexamination proceedings.

255.     Plaintiff knows that the USPTO PTAB has twice determined in institution decisions for *inter partes* review that claims 18-20 of the '013 Patent are reasonably likely unpatentable.

256.     On or about May 14, 2014, Plaintiff proposed to amend claims 18 and 19 of the '013 Patent in *inter partes* review proceedings in an effort to distinguish those claims over the prior art.

257.     Based at least on the USPTO's rejection of claims 18-20 during reexamination, the USPTO PTAB's two determinations that claims 18-20 are reasonably likely unpatentable, and Plaintiff's proposed amendments to claims 18 and 19 in *inter partes* review, no reasonable plaintiff could reasonably expect to succeed on allegations that NUSA infringes claims 18-20 of the '013 Patent.

*No basis to allege infringement of any claim of the '013 Patent*

258.     Every claim of the '013 Patent requires "aseptically disinfecting."

259.     Plaintiff has taken the position before the USPTO that "aseptically disinfecting" requires using a sterilant approved by the FDA at the time of filing of Plaintiff's patent applications.

260.     In particular, during the reexamination of the '013 Patent, Plaintiff sought to distinguish its claimed invention over a reference using chlorinated water to sterilize containers prior to filling by arguing that "[a]t the time the application that matured into the '013 Patent was filed, the

only FDA approved sterilant for use in low acid packaging was hydrogen peroxide, as such chlorine could not have been used in [the] aseptic packaging system as claimed by the '013 Patent."

261.    NUSA's accused machines use peroxyacetic acid to sterilize bottles before filling.

262.    At the time of filing of Plaintiff's patent applications, peroxyacetic acid was not approved by the FDA for aseptically disinfecting bottles for food packaging purposes.

263.    Under Plaintiff's own interpretation of "aseptically disinfecting," NUSA cannot infringe any claim of the '013 Patent, because NUSA's sterilant was not FDA-approved at the time of filing of Plaintiff's patent applications.

_No basis to allege infringement of claims 1-17_

264.    Claims 1-17 of the '013 Patent require that the "disinfecting is with hot atomized hydrogen peroxide, wherein said plurality of bottles are in an upright position during disinfecting."

265.    NUSA's accused machines lack "disinfecting . . . with hot atomized hydrogen peroxide, wherein said plurality of bottles are in an upright position during disinfecting," as required by claims 1-17, whether literally or under the doctrine of equivalents.

266.    On information and belief, Plaintiff knew prior to filing its Complaint that it had no basis to allege that NUSA infringes any of claims 1-17 of the '013 Patent, at least based on Plaintiff's apparent decision not to assert those claims against GEA and based on Plaintiff's discovery of information about NUSA's accused machines from GEA.

_No reasonably objective basis for Plaintiff to believe that it would prevail on any claim of the '013 Patent_

267.    On information and belief, Plaintiff continues to assert claims 18-20 of the '013 Patent, which it knows to be invalid, unpatentable, and not infringed by NUSA under Plaintiff's own interpretation of those claims.

268.     Because Plaintiff could not prevail against NUSA, and knew that it could not prevail against NUSA, on any claims of the '013 Patent, Plaintiff's assertion of infringement of the '013 Patent is objectively baseless.

### 3.     Sham Assertion of the '468 Patent

*Extant claims: claims 1-13, 15-27, and 32-35*

269.     Claims 1-35 are the only issued claims of the '468 Patent.

270.     At the time Plaintiff filed its Complaint, Plaintiff knew that claims 14 and 28-31 of the '468 Patent were canceled during reexamination proceedings at the USPTO.

271.     On information and belief, Plaintiff has asserted, and continues to assert, at least claims 1-3, 9, and 20-23 in its co-pending infringement suit against GEA.

*Intervening rights as to claims 11, 12, 23, and 35*

272.     During reexamination of the '468 Patent, Plaintiff materially amended claims 11, 12, 23, and 35 of the '468 Patent.

273.     By its amendments to claims 11, 12, 23, and 35 of the '468 Patent, Plaintiff is estopped from asserting those claims in original, pre-amendment form.

274.     To the extent that amended claims 11, 12, 23 and 35 issue in any reexamination certificate, NUSA has intervening rights as to those claims.

*No basis to believe that claims 1-27 and 32-35 are valid*

275.     At the time Plaintiff filed its Complaint, Plaintiff knew that claims 1, 2, 4-7, 9-13, 16, 17, and 20-27 were rejected by the USPTO in *inter partes* reexamination.

276.     Claims 1, 2, 4-7, 9-13, 16, 17, and 20-27 are currently rejected in an action closing prosecution and right-of-appeal notice of the reexamination proceedings, and Plaintiff has not appealed the rejection of claims 1, 2, 4-7, 10-13, 21, 22, and 23-27.

277.     Plaintiff knows that the USPTO PTAB determined in an institution decision for *inter partes* review that claims 1-27 and 32-35 of the '468 Patent are reasonably likely unpatentable.

278.     Based at least on the USPTO's rejection of at least claims 1, 2, 4-7, 9-13, 16, 17, and 20-27 in reexamination, and the USPTO PTAB's determination that at least claims 1-27 and 32-35 are reasonably likely unpatentable, no reasonable plaintiff could reasonably expect to succeed on allegations that NUSA infringes, *inter alia*, claims 1-3, 9, or 20-23 of the '468 Patent.

*No basis to allege infringement of any claims*

279.     On information and belief, Plaintiff knew prior to filing its Complaint that it had no basis to allege that NUSA infringes any of claims 4-8, 10-19, and 24-35 of the '468 Patent, at least based on Plaintiff's apparent decision not to assert those claims against GEA.

280.     Claims 1-3, 9, and 20-23 all require "surrounding a region where the aseptic product exits the valve with a sterile region wherein the sterile region is a sterile tunnel."

281.     On information and belief, Plaintiff knows that it has no basis to allege that NUSA's accused machines include "surrounding a region where the aseptic product exits the valve with a sterile region wherein the sterile region is a sterile tunnel," as required by claims 1-3, 9, and 20-23. Plaintiff had such knowledge at least based on Plaintiff's discovery of information about the accused machines from GEA.

282.     Claims 1-3, 9, and 20-23 all require "wherein the sealed actuator is surrounded with the sterile region."

283.     On information and belief, Plaintiff knows that it has no basis to allege that NUSA's accused machine includes "wherein the sealed actuator is surrounded with the sterile region," as required by claims 1-3, 9, and 20-23. Plaintiff had such knowledge at least based on Plaintiff's discovery of information about the accused machines from GEA.

284.     On information and belief, Plaintiff continues to assert at least claims 1-3, 9, and 20-23 of the '468 Patent, which it knows to be invalid and unpatentable, and which Plaintiff knows cannot be infringed by NUSA.

285.     Because Plaintiff could not prevail against NUSA, and knew that it could not prevail against NUSA, on any claims of the '468 Patent, Plaintiff's assertion of infringement of the '468 Patent is objectively baseless.

### 4.     Sham Assertion of the '435 Patent

286.     Claims 1-37 are the only issued claims of the '435 Patent.

287.     On information and belief, Plaintiff has asserted, and continues to assert, at least claims 1-10, 14, 16-21, 25, 27, 29, and 33-36 in its co-pending infringement suit against GEA.

*Intervening rights as to claims 22, 25, 27, and 29*

288.     During reexamination of the '435 Patent, Plaintiff materially amended claims 22, 25, 27, and 29 of the '435 Patent.

289.     By its amendments to claims 22, 25, 27, and 29 of the '435 Patent, Plaintiff is estopped from asserting those claims in original, pre-amendment form.

290.     To the extent that amended claims 22, 25, 27, and 29 issue in any reexamination certificate, NUSA has intervening rights as to those claims.

*No basis to believe that claims 1-37 are valid*

291.     Plaintiff knows that the USPTO PTAB determined in an institution decision for inter partes review that claims 1-37 of the '435 Patent are reasonably likely unpatentable.

292.     Based at least on the USPTO PTAB's determination that claims 1-10, 14, 16-21, 25, 27, 29, and 33-36 (*inter alia*) are reasonably likely unpatentable, no reasonable plaintiff could

reasonably expect to succeed on allegations that NUSA infringes claims 1-10, 14, 16-21, 25, 27, 29, and 33-36 of the '435 Patent.

*No basis to allege infringement of any claims*

293. On information and belief, Plaintiff knew, prior to filing its Complaint, that it had no basis to allege that NUSA infringes any of claims 11-13, 15, 22-24, 26, 28, 30-32, or 37 of the '435 Patent, at least based on Plaintiff's apparent decision not to assert those claims against GEA.

294. Claims 1-10, 14, 16-21, 25, 27, 29, and 33-36 all require "a ratio of at least about 5 to 1" between the sterilant concentrations of various sterile zones.

295. On information and belief, Plaintiff's asserted basis for alleging that NUSA's accused machines satisfy the "ratio of at least about 5 to 1" recited in claims 1-10, 14, 16-21, 25, 27, 29, and 33-36, is that the ratio of concentration of sterilant applied to the bottles to the concentration of sterilant remaining in filled and capped bottles is "at least about 5 to 1." Under that apparent interpretation of the claims, *every* prior-art sterilization tunnel using a chemical sterilant would necessarily meet the claimed ratio, and the claims are invalid over the prior art. Thus, Plaintiff has no basis to assert that the claims are *both* infringed *and* valid.

*No reasonably objective basis for Plaintiff to believe that it would prevail on any claim of the '435 Patent*

296. On information and belief, Plaintiff continues to assert at least claims 1-10, 14, 16-21, 25, 27, 29, and 33-36, which it knows to be invalid and unpatentable, and which Plaintiff knows cannot be infringed by NUSA.

297. Because Plaintiff could not prevail against NUSA, and knew that it could not prevail against NUSA, on any claims of the '435 Patent, Plaintiff's assertion of infringement of the '468 Patent is objectively baseless.

### 5.    Sham Assertion of the '591 Patent

*Extant claims: claims 1-22 and 24-28*

298.    An *ex parte* reexamination certificate for the '591 Patent issued on November 25,

2013. In the *ex parte* reexamination certificate, claim 23 was canceled, and remaining independent

claims 1, 3, 16, 22, 24, and 26 were materially amended. Thus, claims 1-22 and 24-28 are the only

currently issued claims of the '591 Patent.

299.    On information and belief, Plaintiff has asserted, and continues to assert, at least

claims 1, 2, 16-18, and 26 of the '591 Patent in its co-pending infringement suit against GEA.

*Intervening rights as to all extant claims*

300.    At the time Plaintiff filed its Complaint against NUSA, Plaintiff knew that NUSA

would obtain intervening rights in the amended claims of the '591 Patent.

301.    Plaintiff asserted in its Complaint that the '591 Patent was "valid and subsisting."

Three days after filing its Complaint, Plaintiff canceled claim 23 and materially amended all

remaining independent claims (i.e., claims 1, 3, 16, 22, 24, and 26) of the '591 Patent in

reexamination. The amendments to all remaining independent claims also materially amended every

dependent claim of the '591 Patent by virtue of their dependence. Plaintiff, at the time it filed its

Complaint, knew that the claims would be amended and were, therefore, neither "valid" nor

"subsisting," as asserted in Plaintiff's Complaint.

302.    Plaintiff knows that NUSA has intervening rights in all claims of the '591 Patent.

*No basis to believe claims 1-22 and 24-28 are valid*

303.    Plaintiff knows that the USPTO PTAB determined in an institution decision for *inter

partes* review that claims 1-22 and 24-28 of the '591 Patent are reasonably likely unpatentable.

304. Based at least on the USPTO PTAB's determination that claims 1-22 and 24-28 are reasonably likely unpatentable, no reasonable plaintiff could reasonable expect to succeed on allegations that NUSA infringes claims 1-22 and 24-28.

*No basis to allege infringement of any claims*

305. On information and belief, Plaintiff knew, prior to filing its Complaint, that it had no basis to allege that NUSA infringes claims 3-15, 19-25, 27, or 28 of the '591 Patent, based at least on Plaintiff's apparent decision not to assert those claims against GEA.

306. Claims 1, 2, 16-18, and 26 all require extending and retracting a portion of a valve between a first sterile region and a second sterile region.

307. NUSA's accused machines do not extend and retract a portion of a valve between a first sterile region and a second sterile region, as recited in claims 1, 2, 16-18, and 26.

308. On information and belief, Plaintiff knows that it has no basis to allege that NUSA's accused machines include extending and retracting a portion of a valve between a first sterile region and a second sterile region, as required by claims 1, 2, 16-18, and 26. Plaintiff had such knowledge at least based on Plaintiff's discovery of information about the accused machines from GEA

*No reasonably objective basis for Plaintiff to believe that it would prevail on any claim of the '591 Patent*

309. On information and belief, Plaintiff continues to assert at least claims 1, 2, 16-18, and 26 of the '591 Patent, which it knows to be invalid and unpatentable, and unenforceable against NUSA based on NUSA's intervening rights.

310. Because Plaintiff could not prevail against NUSA, and knew that it could not prevail against NUSA, on any claims of the '591 Patent, Plaintiff's assertion of infringement of the '591 Patent is objectively baseless.

### D.  Plaintiff's Specific Intent

311.  On information and belief, Plaintiff's sham litigation, as alleged above, has been conducted with the specific intention to interfere directly with the business position and business relationships of NUSA and of NUSA's suppliers (including GEA).

312.  As part of Plaintiff's unlawful scheme in asserting the Patents in Suit against NUSA, Plaintiff knew, on information and belief, that asserting the Patents in Suit would intimidate potential sellers of bottling machines and discourage them from selling to NUSA and would intimidate potential aseptic bottlers and discourage them from contracting with NUSA to produce aseptically bottled products for NUSA.

### E.  Injury Caused by Plaintiff's Anticompetitive and/or Exclusionary Conduct

313.  As a result of Plaintiff's unlawful actions, NUSA has been unable to purchase bottling machines from suppliers, except under unfavorable terms.

314.  NUSA has been forced to incur substantial expenses defending itself against Plaintiff's unlawful actions.

315.  Plaintiff continues to use the chilling effect of its unlawful and baseless patent infringement suits of known invalid and unenforceable claims to require NUSA to purchase aseptically-packaged foodstuffs from Plaintiff. The products that Plaintiff requires NUSA to purchase from it are non-patented products. Due to Plaintiff's chilling effect through baseless litigation of claims in which NUSA has intervening rights and which Plaintiff knows to be invalid and unpatentable, Plaintiff unlawfully attempts to monopolize the non-patented articles.

316.  The foregoing acts by Plaintiff, and the continuing course of Plaintiff's anti-competitive and/or exclusionary conduct, have harmed and continue to harm consumers and competition in the marketplace, as evidenced, e.g., by a November 2011 presentation at the annual ASEPTIPAK forum, titled *Legal Status and Commercial Impact of the Steuben Litigation*, and by a

January 2012 article in Packaging World magazine, titled *Will 'Steuben patents' dampen growth of aseptics in bottles?*.

317. On information and belief, Plaintiff undertook its anti-competitive and/or exclusionary acts in an attempt to monopolize to relevant market.

318. Plaintiff's conduct has occurred in, and is having a substantial effect on, interstate commerce.

319. As a direct and proximate cause of Plaintiff's anti-competitive conduct, NUSA has been injured and has sustained damages. For example, Plaintiff's conduct has forced NUSA to purchase (and continue to purchase) aseptic-bottling services from Plaintiff (which NUSA would otherwise perform without Plaintiff's involvement or purchase from other co-packers). Additionally, Plaintiff's conduct has caused damage to NUSA in the form of lost business, lost sales, and lost profits. NUSA will continue to sustain damages in the future. Unless the activities complained of are enjoined, NUSA will suffer immediate and irreparable injury for which NUSA has no adequate remedy at law.

320. The extent of NUSA's specific damages resulting from Plaintiff's unlawful actions is non-speculative, and may be ascertained via discovery and/or through the application of accepted damages principles.

321. As a direct competitor that was targeted by Plaintiff's anticompetitive conduct, NUSA has standing to bring this claim.

322. NUSA is entitled to recover damages under Section 2 of the Sherman Act, 15 U.S.C. § 2. NUSA is also entitled to a permanent injunction restraining Plaintiff from engaging in anticompetitive acts.

## COUNT TWELVE
### (Tortious Interference with Prospective Business Relationships and/or Prospective Economic Advantage)

323.     NUSA repeats the allegations of paragraphs 1 through 322 of these Counterclaims as if fully set forth herein.

324.     NUSA has existing and prospective relationships with suppliers of aseptic bottling machines, including GEA, and NUSA has a reasonable expectation that such suppliers will be willing and able to supply aseptic bottling machines to NUSA.

325.     NUSA has and had a prospective economic advantage, namely the ability to bottle its own foodstuffs using bottling lines purchased from GEA.

326.     On information and belief, Plaintiff has intentionally and unlawfully interfered with NUSA's existing and prospective relationships and NUSA's prospective economic advantage by wrongful means, namely sham patent infringement litigation and the assertion of patents to cover all commercially feasible FDA-compliant aseptic bottling processes, including through Plaintiff's continued litigation against GEA. Plaintiff's sham patent infringement litigations also have disrupted NUSA's ability to contract for new aseptic bottling machines and aseptic foodstuff production, for both existing and future contracts. To the extent NUSA has been able to obtain aseptic bottling machines from GEA, it has done so only under unfavorable terms.

327.     Plaintiff's intentional and unlawful interference with NUSA's existing and prospective relationships with suppliers, including GEA, has been conducted in bad faith, and without a bona fide business purpose, to secure a competitive advantage over NUSA. For example, on information and belief, Plaintiff's interference has been conducted in an effort to force NUSA to purchase aseptic-bottling services from Plaintiff, which NUSA would otherwise perform without Plaintiff's involvement.

328.     Plaintiff's disruption of NUSA's contractual relationships and prospective relationships has caused damage to NUSA in the form of lost business, lost sales, and lost profits.

329.     Plaintiff's interference has caused an unlawful restraint of trade.

330.     Unless the activities by Plaintiff complained of are enjoined, NUSA will suffer immediate and irreparable injury for which NUSA has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, NUSA requests entry of a judgment:

A.     Dismissing the Complaint with prejudice;

B.     Declaring that the claims of the '013 Patent are invalid;

C.     Declaring that the claims of the '013 Patent are not infringed by NUSA;

D.     Declaring that the claims of the '188 Patent are invalid;

E.     Declaring that the claims of the '188 Patent are not infringed by NUSA;

F.     Declaring that the claims of the '468 Patent are invalid;

G.     Declaring that the claims of the '468 Patent are not infringed by NUSA;

H.     Declaring that the claims of the '435 Patent are invalid;

I.     Declaring that the claims of the '435 Patent are not infringed by NUSA;

J.     Declaring that the claims of the '591 Patent are invalid;

K.     Declaring that the claims of the '591 Patent are not infringed by NUSA;

L.     Enjoining Steuben, its agents, employees, and attorneys, and all persons in active concert or participation with any of them who receive actual notice of the order by personal service or otherwise from directly or indirectly charging infringement, or instituting any further action for infringement of the Patents in Suit based on NUSA's accused systems and methods, against NUSA's and/or any of its affiliates, suppliers, customers, licensees, potential customers or licensees;

M.     Declaring that Steuben has violated the Sherman Act, 15 U.S.C. § 2;

N.     Granting an award of damages for Steuben's anticompetitive conduct;

O.     Granting an award of treble damages under federal antitrust laws;

P.     Granting an award of punitive damages against Steuben for its unlawful and anticompetitive conduct, which was and is intended to harm NUSA in the conduct of its business;

Q.     Declaring that Steuben has tortiously interfered with NUSA's prospective business relationships and prospective business advantages;

R.     Granting an award of damages for Steuben's tortious interference with NUSA's prospective business relationships and prospective business advantages;

S.     Entering a permanent injunction prohibiting further actions or threatened actions against NUSA or its customers or suppliers for infringement of any of the '013 Patent, the '188 Patent, the '468 Patent, the '435 Patent, or the '591 Patent;

T.     Declaring this case an exceptional one pursuant to 35 U.S.C. § 285;

U.     Awarding NUSA its costs and reasonable attorney's fees incurred in this action; and

V.     Awarding any other and further relief that this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

NUSA requests a trial by jury for all issues that may be properly tried by a jury in this action.

Dated: March 31, 2015                    Respectfully submitted,

by :  s/David Rothenberg
       David Rothenberg
       GEIGER AND ROTHENBERG, LLP
       45 Exchange Street, Suite 800
       Rochester, NY 14614

Virginia L. Carron, *pro hac vice*
FINNEGAN, HENDERSON, FARABOW,
GARRETT&DUNNER, LLP
3500 SunTrust Plaza, 303 Peachtree Street, NE
Atlanta, GA 30308-3263

Thomas H. Jenkins, *pro hac vice*
FINNEGAN, HENDERSON, FARABOW,
GARRETT&DUNNER, LLP
901 New York Avenue NW
Washington, DC 20001-4413

Daniel B. Moar
Christopher J. Belter
GOLDBERG SEGALLA, LLP
665 Main Street, Suite 400
Buffalo, NY 14203

*Attorneys for Defendant Nestlé USA, Inc.*