UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEUBEN FOODS, INC.,

                        Plaintiff,              **DECISION AND ORDER**

v.                                                           13-CV-00892-EAW-JJM

NESTLÉ USA, INC.,

                        Defendant.
_____

        Familiarity with the relevant procedural history of this action is presumed. Defendant Nestlé USA, Inc. ("NUSA") has moved for partial summary judgment declaring "that NUSA has statutory intervening rights under 35 U.S.C. §307 to continue using its accused Line 8 machine free and clear of claims 21, 22, 24, 26, 28, 30, and 39 of U.S. Patent No. 6,536,188 and claims 1, 2, and 26 of U.S. Patent No. 6,209,591. NUSA specifically asks this Court to dismiss, with prejudice, Steuben's claims that NUSA's Line 8 machine infringes claims 21, 22, 24, 26, 28, 30, and 39 of U.S. Patent No. 6,536,188 and claims 1, 2, and 26 of U.S. Patent No. 6,209,591." NUSA's Notice of Motion [179].[1]

        NUSA argues that "[a]bsolute intervening rights apply to the Line 8 filler because NUSA purchased the machine before the reexamination certificate issued for either the '188 patent or the '591 patent. NUSA and GPNA entered into a purchase agreement for the Line 8 filler on January 28, 2013 . . . .The reexamination certificates for the '188 and '591 patents did not issue until September 12, 2013, and November 25, 2013, respectively . . . . Thus, per 35 U.S.C. §307, NUSA has the absolute right to continue to use the Line 8 filler, and Steuben cannot assert the claims added during the reexaminations against NUSA for its use of that filler." NUSA's Memorandum of Law [181], p. 11 of 13.

---

[1]      Bracketed references are to CM/ECF docket entries.

In accordance with my August 26 and 31, 2016 Text Orders [207, 209], the parties have submitted two questions for determination in connection with that motion: 1) Does a machine that is purchased need to be in existence before the reexamined claims issue to establish a party's absolute intervening rights under 35 U.S.C. §307?  2) If a purchased machine was in existence before the reexamined claims issued, is existence outside of the United States sufficient to establish a party's absolute intervening rights under 35 U.S.C. §307?  Having considered the parties' submissions [216, 217] and heard oral argument on September 30, 2016 [221], I will address each question.

## ANALYSIS

**1.** **Does a machine that is purchased need to be in existence before the reexamined claims issue to establish a party's absolute intervening rights under 35 U.S.C. §307?**

In my view, the answer is no. 35 U.S.C. §307(b) states that "[a]ny proposed amended or new claim determined to be patentable and incorporated into a patent following a reexamination proceeding will have the same effect as that specified in section 252 for reissued patents on the right of any person who made, purchased, or used within the United States, or imported into the United States, anything patented by such proposed amended or new claim . . . prior to issuance of a certificate under the provisions of subsection (a) of this section."  Thus, "after a patent emerges from reexamination, [§307(b)] makes available absolute . . . intervening rights to the same extent provided in the reissue statute [35 U.S.C. §252] . . . with respect to amended or new claims in the reexamined patent." Marine Polymer Technologies, Inc. v. HemCon, Inc., 672 F.3d 1350, 1362 (Fed. Cir. 2012).

"The second paragraph of 35 U.S.C. §252 provides for two separate and distinct defenses to patent infringement under the doctrine of intervening rights: 'absolute' intervening

rights and 'equitable' intervening rights . . . . The first sentence of the paragraph defines absolute intervening rights. 'A reissued patent shall not abridge or affect the right of any person . . . who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others . . . the specific thing so made, purchased, offered for sale, used, or imported unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in the original patent.'" Shockley v. Arcan, Inc., 248 F.3d 1349, 1359 (Fed. Cir. 2001) (*quoting* §252).

Concluding that "absolute intervening rights apply only to existing products" (248 F.3d at 1353), Shockley held that an offer to sell products which had not yet been manufactured at the time of patent reissuance cannot create absolute intervening rights. "Arcan asserts that its December 1997 negotiation with Sam's resulted in an offer for sale qualifying for absolute intervening rights under §252 . . . . [R]egardless of whether Arcan's December 1997 price quote was an offer for sale to Sam's, the 10,000 Z–Creepers at issue had not been manufactured before the ′732 reissuance. Absolute intervening rights therefore do not protect Arcan's importation and sale of its Z–Creepers." Id. at 360. On its face, then, Shockley would require an answer of "yes" to question 1.

However, "prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned [en] banc. Where there is a direct conflict, the precedential decision is the first." Deckers Corp. v. United States, 752 F.3d 949, 965 (Fed. Cir. 2014). In my view, Shockley's holding cannot be reconciled with the Federal Circuit's earlier decision in BIC Leisure Products, Inc. v. Windsurfing International, Inc., 1 F.3d 1214 (Fed. Cir. 1993), which held that a binding purchase order for products was sufficient to create absolute

intervening rights under §252.² "[T]his court sustains the district court's ruling that BIC established an absolute intervening rights defense to damages on 10,870 sailboards. BIC had 5,245 boards in inventory as of the reissue date. The district court found that BIC had another 5,625 boards on order . . . . Because BIC purchased the boards before the reissue date, the district court properly excluded the post-reissue sale of the 10,870 sailboards from the computation of damages." Id. at 1222.

It is unclear from the opinion in BIC Leisure whether the 5,625 sailboards on order had already been manufactured by the date they were ordered. However, since courts "are not required to make findings on issues the decision of which is unnecessary to the results they reach", Immigration & Naturalization Service v. Bagamasbad, 429 U.S. 24, 25 (1976),³ I conclude that BIC Leisure's holding depends only on when the products were ordered, not on whether or not the products were in existence at the time they were ordered.

That conclusion is buttressed by other language in BIC Leisure. For example, although Shockley notes that "this court's case law under §252 permitted an accused infringer to continue to use or sell a product that was already made by the issue date of a reissued patent" (248 F.3d at1360, *citing* BIC Leisure 1 F.3d at 1221), what BIC Leisure actually states is that the "absolute right extends . . . to *anything* made, purchased, *or* used before the grant of the reissue patent. In other words, it covers products already made at the time of reissue". 1 F.3d at 1221 (emphasis added). Thus, while absolute intervening rights may apply to products "made" prior to

---

²     Although Judge Rader authored both BIC Leisure and Shockley, the other panel members were different in each case.

³     *See also* In re Mercedes-Benz Antitrust Litigation, 226 F. Supp. 2d 552, 554 (D.N.J. 2002) ("the Court will discuss in this opinion only that information it considers material to its decision"); Federal Judicial Center, Judicial Writing Manual: A Pocket Guide for Judges (2d ed. 2013), p. 4 ("the opinion should present sufficient facts to define for other readers the precedent it creates and to delineate its boundaries").

the time of reissue [or reexamination], they may also apply to products "purchased" prior to that time.

"[T]here can be no sale unless there is a purchase." Butler v. Thomson, 92 U.S. 412, 416 (1875). Therefore, if something not yet in existence can be sold, it can also be purchased. The Federal Circuit has repeatedly stated that "a sale is not limited to the transfer of tangible property but may also be determined by the agreement by which such a transfer takes place". Halo Electronics, Inc. v. Pulse Electronics, Inc., ___F.3d___, 2016 WL 4151239, *7 (Fed. Cir. 2016); Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc., 617 F.3d 1296, 1311 (Fed. Cir. 2010).

In Transocean, the court held that a contract for sale of a drilling rig could be considered a sale of the rig even though it had not yet been completed at the time of the contract. "Maersk USA and Statoil signed a contract and the schematics that accompanied that contract could support a finding that the sale was of an infringing article under §271(a). The fact that Maersk USA, after the execution of the contract, altered the rig . . . is irrelevant to this infringement analysis. The potentially infringing article is the rig sold in the contract, not the altered rig that Maersk USA delivered to the U.S. . . . . [W]e reject Maersk USA's claim that the entire apparatus must have been constructed and ready for use in order to have been sold. Our precedent establishes that a contract can constitute a sale to trigger infringement liability . . . . In this case, there was a contract to sell a rig that included schematics." 617 F.3d at 1311.

Shockley reasons that "[t]he statute uses the term 'the specific thing' to refer to the tangible article which qualifies for absolute intervening rights. This 'specific thing' terminology suggests that the tangible article was in existence before the reissue date." 248 F.3d at 1360. In fact, however, in referring to activities prior to reissue, §252 uses the word

"anything", not "the specific thing". "A reissued patent shall not abridge or affect the right of any person . . . who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, *anything* patented by the reissued patent" (emphasis added).

Therefore, in my view BIC Leisure's holding that the "absolute right extends . . . to *anything* made, purchased, *or* used before the grant of the reissue patent" (1 F.3d at 1221 (emphasis added)) reflects the correct interpretation of §252. But correct or not, since that holding precedes the contrary holding of Shockley, it controls for now.

**2.      If a purchased machine was in existence before the reexamined claims issued, is existence outside of the United States sufficient to establish a party's absolute intervening rights under 35 U.S.C. §307?**

The answer to this question, as phrased, is again "no". "[M]ere . . . existence outside of the United States does not bring devices within the scope of the statute." NetAirus Technologies, LLC v. Apple, Inc., 2013 WL 3089061, *7, n. 3 (C.D. Cal. 2013). However, as NUSA points out, "[s]o long as the triggering act (e.g., purchase) takes place within the United States, an item in existence outside the United States is entitled to intervening rights". NUSA's Reply [217], p. 8 of 12.

Dated:   October 7, 2016

                                                /s/ Jeremiah J. McCarthy
                                                JEREMIAH J. MCCARTHY
                                                United States Magistrate Judge