# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

---

**STEUBEN FOODS, INC.,**

*Plaintiff,*

v.

Civil Action No.
1:10-cv-00780-EAW-JJM

**OYSTAR GROUP,
OYSTAR NOTH AMERICA-EDISON,
INC.,
OYSTAR HAMBA,
HAMBA FILLTEC GMBH & CO. KG,
GTP COMPANIES, LTD. (f/k/a and d/b/a
HAMBA USA, INC., and d/b/a
KAN-PAK, LLC,**

*Defendants.*

---

**STEUBEN FOODS, INC.,**

*Plaintiff,*

v.

Civil Action No.
1:10-cv-00781-EAW-JJM

**SHIBUYA HOPPMAN CORPORATION,
SHIBUYA KOGYO CO. LTD., and
HP HOOD, LLC,**

*Defendants.*

---

---

**STEUBEN FOODS, INC.,**

        *Plaintiff,*

      v.

**GEA PROCESS ENGINEERING, INC.
d/b/a GEA PROCOMAC, and,
GEA PROCOMAC S.p.A.,**

        *Defendants.*

Civil Action No.
1:12-cv-00904-EAW-JJM

---

**STEUBEN FOODS, INC.,**

        *Plaintiff,*    v.

**JASPER PRODUCTS, LLC,**

        *Defendant.*

Civil Action No.
1:13-cv-01118-EAW-JJM

---

**STEUBEN FOODS, INC.,**

        *Plaintiff,*

      v.

**NESTLÉ USA, INC.,**

        *Defendant.*

Civil Action No.
1:13-cv-00892-EAW-JJM

---

## PLAINTIFF'S OPPOSITION TO DEFENDANTS'
## MOTION FOR LEAVE TO AMEND FINAL INVALIDITY CONTENTIONS

The existence of the Metal Box cup filler, the fact of it having been validated by the FDA for low acid aseptic processing, and its alleged 160 cups per minute throughput have all been of record in the proceedings attacking Steuben's patents at the United States Patent and Trademark Office since September 2010—more than six years ago. Now, more than six months since the deadline to serve final invalidity contentions has passed, Defendants move for leave to amend their final invalidity contentions—in some yet unstated way—to add new invalidity arguments based on that same Metal Box cup filler that has been of record at the Patent Office for over six years. Defendants admit (at 6)[1] they were all aware of "*a* Metal Box filler and its capabilities prior to Mr. Taggart's deposition …." (Emphasis in original). This admission alone should be fatal to their motion. Realizing this, Defendants attempt to justify their belated disclosure by misconstruing Mr. Taggart's deposition testimony to argue that Mr. Taggart somehow testified that a cup is now a bottle and that he newly revealed the specific model number of a Metal Box filler. Neither assertion is true. That Defendants knew that Metal Box was in the cup filler business is sufficient to show that they could have taken steps to uncover further information about the same, and their failure to do so means they cannot carry their burden to establish diligence.

In order to meet their burden to establish that they should be permitted to amend their final invalidity contentions, Defendants must establish that they have been diligent. If Defendants cannot establish diligence, under Federal Circuit law, the inquiry ends there. In order to show

---

[1] Parenthetical references, such as this, throughout the brief refer to Defendants' Joint Memorandum of Law in Support of Defendants' Motion for Leave to Amend Final Invalidity Contentions. [*See, e.g.,* 13-cv-892, Dkt. No. 224-1]. Steuben is not filing separate responses to each Defendants' supplemental filings. Instead, Steuben addresses those individual arguments herein.

diligence, Defendants must demonstrate that they could not have discovered the "newly" discovered information concerning the Metal Box filler earlier. Obviously, Defendants cannot establish this here because they—along with the entire aseptic packaging industry—were well aware that the Metal Box cup filler had been validated by the FDA for low acid aseptic packaging. In fact, Steuben has produced information concerning the Metal Box filler to Defendants on multiple occasions. Each of those productions were made before Defendants served even their initial invalidity contentions. Despite having this information, Defendants took no steps to obtain discovery on Metal Box's cup fillers. Defendants argue that their lack of diligence should be excused because Mr. Taggart's deposition revealed the importance of the Metal Box cup filler. But that is not correct—Mr. Taggart's testimony did not reveal any new technical detail concerning the Metal Box cup filler. To prop up their argument, Defendants strain to assert that as a result of Mr. Taggart's deposition, the 1980s Metal Box cup filler is now somehow a bottle filler. It is not, and Defendants' argument should be seen for what it is—gamesmanship.

Steuben's patents make clear that the term "aseptic" as used in the patents refers to the relevant FDA standard for aseptic processing. As a result, the starting point for any reasonable invalidity search should have been with FDA validated aseptic packaging systems—and in fact it was. Defendants have cited numerous references discussing FDA validated aseptic packaging machines, including references discussing the Metal Box cup filler that is the subject of Defendants' motion. Simply put, Defendants were aware of the Metal Box cup fillers long ago, but decided not to include arguments concerning the same in either their initial or final invalidity contentions.

Defendants seek to shift the blame to Steuben and Mr. Taggart by arguing that Steuben did not produce information about the Metal Box cup filler to Defendants. But Steuben did. Steuben

produced the subject information to all Defendants from the papers submitted in the Patent Office proceedings attacking Steuben's patents. Moreover, Mr. Taggart testified that neither he nor Steuben had any additional documents concerning the 1980s era Metal Box cup filler to produce. In their supplemental briefs, Defendants admit, as they must, that they did not just recently learn about Metal Box. They have no one to blame but themselves for their decision to not include the Metal Box machines in their final invalidity contentions, and their motion should be denied.

## LEGAL STANDARD

Local Patent Rule 3.10(a) provides: "A party may amend its … 'Final Invalidity Contentions' … only by order of the Court upon a showing of good cause and absence of unfair prejudice to opposing parties, made promptly upon discovery of the basis of the amendment." "Amendments to infringement and invalidity contentions are not granted as liberally as requests for amendments to pleadings, in part, because the philosophy behind amending claim charts is decidedly conservative and designed to prevent the 'shifting sands' approach, to a party's contentions." *Bausch & Lomb Inc. v. Vitamin Health, Inc.*, No. 13-CV-6498, slip op. at 7 (W.D.N.Y. Sept. 29, 2015) (internal citation and quotation omitted); *see also Nautilus Neurosciences, Inc. v. Wockhardt USA LLC*, No. 11-cv-1997, 2013 U.S. Dist. LEXIS 189253, at *6 (D.N.J. Jan. 23, 2013) ("Sufficiently satisfying the elements set forth in Rule 3.7 is not a simple undertaking, and requires the movant to overcome a substantial preference against granting the amendment.").

"Good cause requires a showing of diligence" because the rule "seek[s] to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *Bausch & Lomb Inc.*, slip op. at 6, 7; *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366-67 (Fed. Cir. 2006) (applying the Northern District of California's similar local patent rule); *Convolve, Inc. v. Compaq Computer Corp.*, No. 00 Civ. 5141, 2007 U.S. Dist.

LEXIS 15747, at *8 (S.D.N.Y. Mar. 7, 2007). Diligence is a threshold requirement, and the failure to establish diligence warrants denial of an amendment even in the absence of any prejudice. *O2 Micro Int'l Ltd.*, 467 F.3d at 1368 (concluding that it did not "need to consider the question of prejudice" because the "district court properly conclude[d]" a lack of diligence); *Bausch & Lomb Inc.*, slip op. at 7, 11-12 (providing no analysis of prejudice after a finding of a lack of diligence); *Jazz Pharms., Inc. v. Roxane Labs., Inc.*, No. 10-6108, 2013 U.S. Dist. LEXIS 28374, at *12 (D.N.J. Feb. 28, 2013) (finding no error in a magistrate judge's refusal to consider prejudice where the moving party was not diligent).

"'The burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence.'" *Bausch & Lomb Inc.*, slip op. at 7 (quoting *O2 Micro Int'l Ltd.*, 467 F.3d at 1366). A party seeking to establish good cause must prove that it was diligent both throughout the course of discovery and in its search for relevant prior art. *Jazz Pharms., Inc.*, 2013 U.S. Dist. LEXIS 28374, at *7. "[T]he critical question is whether the party could have discovered the new information earlier had it acted with the requisite diligence." *Symantec Corp. v. Acronis Corp.*, No. 11-5310, 2013 U.S. Dist. LEXIS 137845, at *16 (N.D. Cal. Sept. 25, 2013) (internal quotation omitted); *Warner Chilcott Co. v. Mylan Inc.*, No. 13-6560, 2015 U.S. Dist. LEXIS 74759, at *20 (D.N.J. June 9, 2015) (finding no diligence where the moving party could not provide a "credible explanation for why [it] could not have found these prior art references sooner").

## ARGUMENT

**I.    Defendants' motion should be denied because they have not shown their proposed amendments.**

As a threshold matter, Defendants' motion should be denied because they have not shown the Court or Steuben their proposed amendments to their final invalidity contentions—opting

4

instead to leave the Court and Steuben guessing as to what new arguments they might want to add to the case. Sprinkled throughout their motion papers are suggestions that they may want to craft new invalidity arguments based on legal theories of anticipation, obviousness, and/or even derivation. But without seeing the proposed amendments, the Court and Steuben can only guess as to what might be the basis for their tardy contentions. Defendants bear the burden to establish good cause to make a specific amendment to their contentions and cannot possibly meet their burden without revealing their proposed amendment.

Defendants' failure to submit proposed amendments is further significant given that they are required to establish diligence, which looks to whether the party seeking the amendment could have discovered the allegedly new information earlier. In order to undertake this inquiry, Steuben and the Court must understand what exactly the proposed amendment is to determine if that information could have been discovered sooner. Steuben and the Court also need to see and understand the proposed amendments in the Nestlé case in particular as Nestlé has already reached its sixty reference limit under the Court's Text Order. [13-cv-892, Dkt. No. 110].

Steuben respectfully submits that Defendants' motion should be denied for the reason that the Court cannot possibly consider the diligence inquiry without understanding that which Defendants propose to add to their final invalidity contentions if their motion is granted. *See Pozen Inc. v. Par Pharm., Inc.*, No. 6:08cv437, 2010 U.S. Dist. LEXIS 146631, at *31 (E.D. Tex. June 8, 2010) (denying motion to amend invalidity contentions for lack of good cause where the defendant did not include proposed amendments); *cf. Wi3, Inc. v. Actiontec Elecs., Inc.*, No. 14-CV-6321, slip op. at 8-9 (W.D.N.Y. Nov. 21, 2014) (denying improper motion to amend answer for failing to comply with the Local Rules which required the defendant to attach a copy of the proposed amended pleading to the motion for leave); *Young v. Nooth*, 539 Fed. App'x 710, 711

(9th Cir. 2013) (unpublished) (finding no abuse of discretion in denying a motion for leave to amend a complaint where the proposed amended complaint not attached to the motion, as required by local rule).

## II. Defendants' motion should be denied because they were not diligent.

Defendants did not act with the requisite diligence in seeking their unspecified amendment for at least two reasons. First, Defendants knew the technical information concerning the Metal Box cup filler they claimed to have learned at Mr. Taggart's deposition because those details were produced by Steuben and are of record at the Patent Office—where any reasonably diligent party searching for prior art would presumably look first. *See, e.g.*, *Farstone Tech., Inc. v. Apple, Inc.*, No. 8:13-CV-1537-ODW, 2015 WL 3901708, at *2 (C.D. Cal. June 24, 2015) ("Prior art references listed within the patent application and related documents are easily revealed by a diligent search."). Second, Defendants' briefs include no mention of any attempt they took to seek discovery of the Metal Box cup filler of which they were admittedly aware.

### A. Defendants knew the technical details they claim to have learned at Mr. Taggart's deposition.

Defendants studiously avoid presenting evidence that would permit the Court to properly evaluate whether they could have discovered the alleged prior art earlier with appropriately diligent searching. Defendants admit (at 6-7) that they "had varying degrees of awareness of a Metal Box cup filler and its capabilities prior to Mr. Taggart's deposition," including some Defendants having knowledge of the *particular* filler that is the subject of their motion. (Emphasis omitted). Defendants do not admit, however, that one of the expert witnesses retained by Nestlé co-authored a book that details the role the FDA-approved Metal Box cup filler played in the history of the development of aseptic packaging technology in the United States.

Despite this knowledge of the Metal Box cup filler, Defendants claim (at 7) to have learned three things about the Metal Box from Mr. Taggart's deposition: (1) the Metal Box filler processed 12 ounce cups that were approximately 3.5 inches in diameter and 5 inches tall; (2) the Metal Box cup filler used atomized hydrogen peroxide and hot-air activation to produce a 6 log reduction in spore organisms; and (3) that the Metal Box cup filler achieved FDA validation for the packaging of low acid foodstuffs. But to the extent these things were not known by Defendants, it was incumbent on Defendants to undertake a reasonable investigation, which would have uncovered such details of the Metal Box cup filler—most of which were disclosed in the various references of record at the PTO. The figures below are from the *David* reference that was submitted to the PTO in 2010 that has been cited by every Defendant in the related cases in their invalidity contentions.[2]

## Appendix D

## FDA ACCEPTED LOW-ACID PACKAGING SYSTEMS*

* * *

---

[2] Steuben has not attached the references to which it refers because they are voluminous in nature. If the Court would like copies of any or all of the references, Steuben would be happy to submit the same.

**Fresh-Fil SL1, ML4**

*Type*
 Preformed plastic cup — horizontal fill and seal

*Manufacturer and U.S. Representative*
 Auto Prod, Inc.
 5355 115th Avenue, W.
 Clearwater, FL 34620

*Basic Machine Description*
 Other than the number of lanes (SL1 — one lane, ML4 — 4 lanes) the basic
 operation of the two machines is the same. This equipment starts with
 preformed cups that are carried through the equipment by a pocket chain. The
 aseptic zone is sterilized by hot air, and sterile air overpressure is used to
 maintain sterility. The cups are first sprayed with $H_2O_2$, then dried with hot
 air to complete sterilization. Lid stock is sterilized as it passes through an $H_2O_2$
 bath then through a hot air tunnel. The cups are filled, sealed, cut from the
 lidstock, and discharged from the machine.

*Package Sizes and Line Speeds*
 ML4  3- to 15-oz cups on 4 lanes.
 SL1  3- to 12-oz cups on 1 lane.
   6-oz cups at 2400/h.

Regarding the size of the cup, and as an initial matter, Defendants fail to include the fact
that Mr. Taggart expressly testified that his statement as to the measurements of the cup was "a
guess." Dkt. No. 224-3, Transcript at 288:13-15. But in any event, as can be seen in the excerpt
above, the *David* reference unambiguously discloses that the machine could process 12 oz. cups
and that hydrogen peroxide ($H_2O_2$) was applied to the container and then removed with sterile air.
The *David* reference also discloses a throughput of 160 cups per minute (2400 cups per hour = 40
cups per minute per lane = 160 cups per minute on 4 lanes). This description of this cup filler
appears in a section of the *David* reference entitled "FDA Accepted Low-Acid Packaging
Systems"—demonstrating that it had received FDA validation for the packaging of low acid
foodstuffs.

In addition to the *David* reference, the 1993 "Reuter" reference, which was cited by GEA
in its 2013 petitions for *inter partes* review, states that the Metal Box equipment "is now operating
under FDA protocol for low-acid products in the USA market." GEA attempts to distract from

8

this to argue that somehow it needed to know the specific model number of the Metal Box cup filler before understanding its importance. But the David reference that Defendants have repeatedly cited includes the model number and, even if it did not, diligence required GEA to take steps to understand which specific Metal Box cup fillers had received FDA validation. In an attempt to further deflect its knowledge of the Metal Box cup fillers, GEA is careful to cabin its statements as to who knew what and when to "those working on GEA's invalidity contentions." [12-cv-904, Dkt. No. 374 at 3]. That counsel did not read the whole reference or bother to check with those having knowledge of the industry at GEA, does not excuse their lack of diligence.

Another reference that has been cited at the Patent Office is entitled the "Handbook of Aseptic Processing and Packaging" by David, Graves, and Szemplenski. Thomas Szemplenski is one of Nestlé's retained experts for this case. That reference includes a description of the Metal Box cup filler in a chapter written by Mr. Szemplenksi. Nestlé's expert writes (at 91):

> In the 1980s, Metal Box, a manufacturer located in the United Kingdom, introduced an aseptic cup filler utilizing preformed cups. Although relatively slow at 160 cups per minute, Metal Box was able to install several at commercial installations, aseptically packaging puddings, desserts, oatmeal, and cheese sauces. Most of those installations have opted for higher rate production-rate fillers. At present, there is only one Metal Box aseptic cup filler at a commercial installation in the United States. It is currently at a copacking facility in Minnesota where it is mainly packing cheese sauces.

> The Metal Box aseptic filler was purchased by FMC FoodTech, which has recently changed the name to JBT FoodTech. However, JBT FoodTech does not appear to be aggressively promoting the Metal Box filler any longer.

Defendants also argue that they learned for the first time at Mr. Taggart's deposition that the Metal Box cup filler sterilized cups to a level that achieved a 6 log reduction in spores. But Defendants cannot in good faith argue that this would not have been generally understood by those in the aseptic packaging industry. The fact that the Metal Box cup filler had achieved FDA

approval, as explained in the references, would at a minimum have suggested it had achieved the understood FDA target of a 6 log reduction in spores.

In short, Defendants have known about the Metal Box cup fillers for decades and have had access to technical information relating to the Metal Box cup filler since at least 2010. That they chose to rely on other references in their final invalidity contentions does not excuse their lack of diligence. The burden was on Defendants to conduct a diligent search and that "includes taking reasonable measures to review documents relating to the patents-in-suit and tailoring [their] public search appropriately." *Shire LLC v. Amneal Pharms., LLC*, No. 2:11-cv-03781, 2013 U.S. Dist. LEXIS 180920, at *14-15 (D.N.J. Dec. 16, 2013), *aff'd*, 802 F.3d 1301 (Fed. Cir. 2015). Defendants did not do so and their alleged failure to recognize the cited portions of the references above—some of which were authored by Defendants' own expert—does not establish diligence. Indeed, "carelessness is not compatible with a finding of diligence and offers no reason for grant of relief." *West v. Jewelry Innovations, Inc.*, No. C 07-1812, 2008 U.S. Dist. LEXIS 84928, at *10 (N.D. Cal. Oct. 8, 2008) (internal citation and quotation omitted).

## B. Defendants have included no facts to support a finding that they acted diligently in seeking discovery concerning the Metal Box cup filler.

As the parties seeking to amend their final invalidity contentions, Defendants bear the burden to establish diligence. *See Bausch & Lomb Inc. v. Vitamin Health, Inc.*, No. 13-CV-6498, slip op. at 7 (W.D.N.Y. Sept. 29, 2015) ("'The burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence.'") (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc*., 467 F.3d 1355, 1366 (Fed. Cir. 2006)). Defendants must show diligence from the start of discovery through the discovery of the basis for the amendment. *Jazz Pharms., Inc.*, 2013 U.S. Dist. LEXIS 28374, at *7; *West*, 2008 U.S. Dist. LEXIS 84928, at *7. It is not enough that Defendants allegedly acted with diligence in seeking to amend their final

invalidity contentions shortly after the Taggart deposition—the diligence inquiry considers whether the party proposing an amendment was diligent in discovering the basis for the amendment. *Jazz Pharms., Inc.*, 2013 U.S. Dist. LEXIS 28374, at *7.

Defendants all admit (at 6) that they were aware of "*a* Metal Box filler and its capabilities prior to Mr. Taggart's deposition," but attempt to distract from this fatal admission to argue that they did not know about capabilities of the specific Metal Box SL-4/ML-4 cup filler. But given Defendants' admitted knowledge of the existence of a Metal Box cup filler, they easily could have discovered the technical information they claimed to have learned for the first time from Mr. Taggart at his deposition. For example, Defendants could have read the *David* reference they have been citing for years or reviewed Steuben's document production. In addition, Defendants could have asked their experts for information on aseptic packaging equipment validated with FDA. But Defendants apparently did not do any of these seemingly obvious things with respect to the Metal Box cup filler as they have provided no information regarding any attempts to find information related to the Metal Box cup filler before they served either their initial or final invalidity contentions.

The situation here is analogous to that in the *Pozen* case in which a group of Defendants sought to amend their invalidity contentions. There, "Defendants generally assume[d] that diligence was demonstrated because the importance of [the] reference only became apparent upon review by [their] expert." *Pozen*, 2010 U.S. Dist. LEXIS 14663 at *22. The Court rejected that argument finding that there was "no reason why Defendants could not have disclosed these references as a matter of pleading in their contentions while then presenting some, if not all, of these references in their expert reports." *Id*. at *26. Here, Defendants could have sought information about Metal Box cup fillers and included the same in their invalidity contentions.

There was no reason they needed to wait until the deposition of Mr. Taggart. Indeed, since Mr. Taggart's deposition, Jasper has served subpoenas on the National Food Labs and Quaker Oats in attempt to now locate Metal Box information. Likewise, Nestlé has served subpoenas on Abbott Labs and JBT in attempt to locate Metal Box information. There is simply no reason, given Defendants' knowledge of the Metal Box cup filler that such discovery could not have been sought months ago.

Defendants have known from the beginning that the claimed inventions are directed to FDA compliant aseptic bottling technology. Defendants have also known that Metal Box was one of a handful of companies that achieved FDA validation for its aseptic packaging equipment. Defendants' own experts have written about Metal Box (*see* discussion *supra* at 11) and even worked at Metal Box. This would not be surprising to anyone in the aseptic field because it was well known that Metal Box was the only company to have achieved FDA validation of a low acid preformed aseptic cup filler as of February 1999.

Moreover, to the extent Defendants now intend to argue that a cup is somehow a bottle, Metal Box should have been the obvious starting point. But Defendants did nothing—perhaps because they thought it unlikely that any information from Metal Box would support Defendants' fanciful new argument. Instead, they waited until after Mr. Taggart's deposition to start serving subpoenas seeking information related to the Metal Box fillers. There was no reason Defendants could not have sought this discovery sooner, especially given the fact that other third parties have been served with subpoenas by Defendants in an attempt to gather prior art information.

## C.     Defendants' excuses do not establish that they were diligent.

Rather than attempting to establish that they acted diligently—as they are required to do to prevail on their motion—Defendants offer excuses for why they were not diligent. Those excuses

are either legally unavailing or based on misrepresentations of fact. To be sure, none of them saves Defendants' motion.

Defendants argue that not all Defendants had knowledge of the Metal Box cup fillers. But the fact that any of the Defendants had knowledge of the machine establishes that a diligent search would have uncovered information about it—for example, by simply inquiring during a conference among Defendants. *See Symantec*, 2013 U.S. Dist. LEXIS 137845, at *16 ("Here, Acronis could have discovered the [alleged] prior art had they engaged in any independent review or investigation for potential prior art; …."); *Warner Chilcott*, 2015 U.S. Dist. LEXIS 74759, at *20 ("Defendants should have put their best foot forward from the outset. If for some reason Defendants did not believe that they were capable of conducting the targeted searches needed to discover the relevant prior art, they should have hired an expert to have helped them at that time; not because expert opinions need to be included in a party's invalidity contentions, but because Defendants were incapable of making a diligent search without one.").

Defendants also admit that they were in possession of the *David* and *Chambers* references, both of which provide descriptions of Metal Box *and* the SL-4/ML-4 cup fillers.[3] "[A]ccess to the information, or documentation that should have led [a party] to it earlier than [it] now claim[s]" constitutes constructive knowledge, which is fatal to Defendants' claim of diligence here. *Shire LLC*, 2013 U.S. Dist. LEXIS 180920, at *10-11 (finding no diligence where party cited the second edition of an article in its invalidity contentions, where third edition of the article referenced an

---

[3] The fact that some Defendants still have not reviewed *David* or *Chambers*, which are discussed in their joint motion, and excerpts of which are attached as exhibits, simply underscores the lack of these Defendants' diligence. *See Oystar* Dkt. No. 204 ("In September 2016, counsel for Oystar became aware of a handbook describing a Metal Box filler, but it is Oystar's *understanding* that what was disclosed did not mention the 'SL-4/ML-4' filler." (emphasis added)); *Oystar* Dkt. No. 203 ("Counsel for Kan-Pak became aware of a handbook describing a Metal Box filler in approximately September 2016.").

article the party sought to add to its contentions); *Jazz Pharms., Inc.*, 2013 U.S. Dist. LEXIS 28374, at *8-9 (finding no error in the Magistrate Judge's finding that the defendant was not diligent where it was aware of citation to material from which it could have derived references that it sought to add but chose not to search for them for more than a year).

Defendants argue (at 9) that they did not previously appreciate the significance of the SL-4/ML-4 filler. However, lack of understanding of relevance does not constitute diligence. *Shire LLC*, 2013 U.S. Dist. LEXIS 180920, at *14 (finding no good cause to amend where the moving party alleged that it did not understand the significance of a reference until after a deposition); *Symantec*, 2013 U.S. Dist. LEXIS 137845, at *24 (finding that a party who did not investigate certain products because it "did not initially believe that these products were relevant" was not diligent); *Nautilus*, 2013 U.S. Dist. LEXIS 189253, at *13 ("[T]he failure to recognize the materiality of information in one's possession … is [not] a demonstration of diligence."); *King Pharms., Inc. v. Sandoz, Inc.*, No. 08-5974, 2010 U.S. Dist. LEXIS 50163, at *12 (D.N.J. May 19, 2010) (finding that a party who obtained a full copy of an article promptly upon recognizing its materiality was not diligent because a search 18 months prior had identified the article by title and abstract).

Defendants also argue (at 10) that there because was so much information available at the Patent Office (largely due to Steuben's voluminous submissions of patents and printed publications) "[Defendants had] little basis to distinguish the Metal Box fillers from any of the hundreds of other prior-art aseptic systems." But "[i]t is Defendants' burden to conduct a diligent search for prior art. This includes taking reasonable measures to review documents relating to the patents-in-suit and tailoring [their] public search appropriately." *Shire LLC*, 2013 U.S. Dist. LEXIS 180920, at *14-15.

Moreover, if the scarcity of information or the nature of art made it difficult for Defendants to conduct "the targeted searches needed to discover the relevant prior art, they should have hired an expert to have helped them at that time; not because expert opinions need to be included in a party's invalidity contentions, but because Defendants were incapable of making a diligent search without one." *Warner Chilcott*, 2015 U.S. Dist. LEXIS 74759, at *20; *see also Symantec*, 2013 U.S. Dist. LEXIS 137845, at *26 (finding no diligence and rejecting the defendant's argument that a prior art search was complicated by the number of patents and products at issue). Indeed, Defendants have hired experts that not only have detailed knowledge of the Metal Box cup fillers, but who have published on them.

In sum, Defendants have offered various excuses, but none of those excuses can result in a finding of diligence. Defendants' motion should be denied.

### D. The alleged materiality of the information cannot save Defendants from their lack of diligence.

Defendants argue (at 14) that "Mr. Taggart's testimony is exceptionally relevant to the invalidity of the asserted claims." But Defendants' argument is based on intentionally misconstruing Mr. Taggart's testimony. As explained in more detail below, Mr. Taggart did *not* testify that the Metal Box cup filler was a bottle filler—and misconstruing his testimony cannot turn the cup filler into a bottle filler. And Mr. Taggart did not testify to any facts that would support Defendants' derivation claim. Indeed, Defendants studiously avoided any attempt at Mr. Taggart's deposition to elicit any testimony that would confirm their convenient misunderstanding.

Even if Defendants were correct, "materiality is not the sole consideration of the 'good cause' requirement." *Symantec*, 2013 U.S. Dist. LEXIS 137845, at *35. Moreover, Defendants' materiality argument highlights their lack of diligence. If the Metal Box cup filler was in fact "exceptionally relevant" to Defendants' invalidity claims—logic dictates that they would have

identified it early on. As one court succinctly stated: "[i]f the late-identified prior art is as material as [Defendants] claim[], one would expect that [they] would have done more to investigate such potential art earlier in the case." *Id.*; *MacroSolve, Inc. v. Antenna Software, Inc.*, No. 6:11-cv-287, 2013 U.S. Dist. LEXIS 102954, at *16 (E.D. Tex. July 23, 2013) (stating that "the relative importance of the prior art should generate commensurate diligence"). Such is particularly the case here where Defendants' experts had published on the Metal Box cup filler, and a description of the same has been of record in the PTO proceedings for some six years.

### III. Mr. Taggart's deposition testimony does not justify Defendants' request to amend their final invalidity contentions.

Defendants' entire motion is premised on the falsehood that somehow Mr. Taggart's testimony transformed the Metal Box *cup* filler into an aseptic *bottle* filler. But a bottle is not a cup. Mr. Taggart testified that the "approximate dimension of a 12-ounce cup was about 3 and a half inches in diameter and about 5 inches tall." Dkt. 224-3, Transcript. at 288:13-15. Mr. Taggart qualified his statement by adding "[t]hat's just a guess." *Id.* The image of the cup below meets those approximate dimensions and, but plainly, it is still a cup—not a bottle—as Defendants' motion would require. The image on the right is a bottle.




**A Cup**          **A Bottle**

Here is the "gotcha" game the Defendants are playing in their motion. Rather than ask Mr. Taggart a simple follow up question as to whether the Metal Box fillers were capable of processing bottles—which they were not—Defendants' counsel decided to run with Mr. Taggart's informal description of the size of cups that were processed by the Metal Box filler. Defendants' "gotcha" goes as follows: (i) in his deposition Mr. Taggart described a cup that has an opening dimension that is narrower than the height dimension (*i.e.*, a tall cup); (ii) a bottle has an opening that is narrower than its height; (iii) therefore, the cup described by Mr. Taggart is a bottle. Following this strained "logic," Defendants conclude that the Metal Box cup filler—because it was capable of filling tall cups—was in fact a bottle filler, and therefore is "exceptionally relevant" to these cases.

Defendants' argument cannot be reconciled with common sense. Especially here, where the description of Mr. Taggart's patents and the substance of Steuben's prosecution history before the Patent Office makes clear that Mr. Taggart and Steuben consider a key distinguishing feature of Mr. Taggart's invention to be that it is directed to aseptically filling *bottles*—unlike the prior art *cup* systems such as the Metal Box cup filler. Indeed, Nestlé even concedes that "during patent prosecution, Steuben repeatedly argued that cup machines were *not* relevant to the invention, contending that 'the substitution of bottles for cups is not an obvious material substitution.'" [13-cv-892, Dkt. No. 225 at 3 (citing Motion Ex. D, U.S. Pat. Appl. No. 09/306,552, Brief of [Steuben] Appellant at 7-9 (Oct. 10, 2001)].

Mr. Taggart's testimony cited by Defendants is entirely consistent with his testimony that a bottle "typically … has a much smaller diameter-to-height ratio than a cup." Dkt. 224-3, Transcript at 288:22-24. Mr. Taggart is clearly referring to the smaller opening of the bottle neck that characterizes a bottle relative to its greatest width, consistent with the description in the patent.

The specification of Steuben's patents explains that this smaller opening of the bottle's neck makes it much more difficult to sterilize a bottle than a cup, as it is much more difficult to remove the sterilant from a bottle given that narrow neck. *See, e.g.*, U.S. Patent No. 6,945,013 at 2:51-55. But most troubling is that none of Defendants made any attempt to ask a simple follow up question during Mr. Taggart's two days of deposition to see if he was actually testifying that the Metal Box cup filler could fill bottles—because they all well knew that it could not.

Defendants also suggest that Mr. Taggart testified that he used the Metal Box filler as the starting point for his invention. But that is not true either. Mr. Taggart simply testified that he had "worked on a Metal Box filler" in response to a question as to whether he had "ever worked with any machine that produced a 6 log spore reduction." Dkt. No. 224-3, Transcript at 142:6-13. Defendants (at 12-13) also baselessly accuse Steuben and/or Mr. Taggart of hiding information concerning Metal Box. But Mr. Taggart testified that he does not have any records in his possession from his work in the 1980s with the Metal Box filler and that Steuben would not either:

> Q. Do you have any records of either of these Metal Box machines?
>
> A. I have no record of them. No, not personally.
>
> Q. Does Steuben have any records of the Metal Box machines?
>
> A. Steuben would not because they were not involved. That was my employment with a previous employer.

Dkt. No. 242-3, Transcript at 146:24-147:8.

Mr. Taggart also testified, unsurprisingly, that the best source for Metal Box documents might be with the companies that had installed the machines. *Id*. at 147:9-15. That is a matter of common sense and should have been Defendants' starting point—months ago as they were developing their invalidity contentions.

Defendants also argue (at 3) that they learned for the first time at Mr. Taggart's deposition that he worked on one or more Metal Box fillers. But Defendant Jasper—Defendant GEA's customer—admits that it knew about Mr. Taggart's work with Metal Box cup fillers in February of this year, before the deadline for service of final invalidity contentions and before Mr. Taggart's deposition. [13-cv-1118, Dkt. No. 151 at 1].

## II.    Defendants' amendment would be prejudicial to Steuben.

As Defendants cannot carry their burden to establish diligence, there is "no need to consider the question of prejudice" to Steuben. *O2 Micro Int'l Ltd.*, 467 F.3d at 1368; *see also Bausch & Lomb Inc*, slip op. at 7, 11-12 (providing no analysis of prejudice after a finding of a lack of diligence); *Synopsys Inc. v. Mentor Graphics Corp.*, No. C-12-06467, 2014 U.S. Dist. LEXIS 51445, at *13-14 (N.D. Cal. Apr. 14, 2014) ("declin[ing] to consider whether [the non-moving party] will be prejudiced by the proposed amendments" "[b]ecause the court finds that [the moving party] ha[d] not shown good cause exists"); *Jazz Pharms., Inc.*, 2013 U.S. Dist. LEXIS 28374, *13 (stating that the court did not address arguments related to undue prejudice on appeal because it did not find error in finding that the moving party was not diligent).

That said, giving Defendants a blank sheet to freely amend their final invalidity contentions at this stage of the case would be highly prejudicial to Steuben—particularly given the fact that Defendants have given neither Steuben nor the Court any insight into what those amendments might be. Instead, (at 3) "Defendants move for leave to amend their contentions of invalidity of *at least some* of the asserted claims of *one or more* of the patents-in suit as being *anticipated* under 35 U.S.C. § 102, *invalid* under 35 U.S.C. § 102 as being derived from another, *and/or obvious* under 35 U.S.C. § 103 …." (Emphasis added). In other words, Defendants have failed to provide any details of the proposed amendment. Steuben is left to guess which of the claims would be targeted, which theories would apply, and how many new obviousness combinations would be

added.  *See, e.g.*, *Nautilus*, 2013 U.S. Dist. LEXIS 189253, at *16 (finding it would be prejudicial to plaintiff to have "to reevaluate [its] strategy developed over the course of the last sixteen months … to account for the New Contentions").

After years of delay for various reasons, the parties are finally making progress to narrow the cases with final contentions having been served and claim construction proceedings now well underway.  The validity of Steuben's patents has been under serial attack by Defendants at the Patent Office since 2010.  There has been more than enough time for Defendants to crystalize their invalidity theories.  The availability of discovery to cure a late disclosure "defeats the entire purpose of the Patent Local Rules, which is to require the early disclosure of parties' positions and facilitate the speedy, fair and efficient resolution of patent disputes."  *Bayer Healthcare Pharms., Inc. v. River's Edge Pharms., LLC*, No. 1:11-cv-1634, 2015 U.S. Dist. LEXIS 179672, at *24 (N.D. Ga. May 21, 2015) (internal quotation omitted); *see also Finisar Corp. v. DirecTV Grp., Inc.*, 424 F. Supp. 2d 896 (E.D. Tex. 2006) ("Enough time and money will eventually cure any prejudice caused by late disclosure of information, but that will not result in the 'just, *speedy, and inexpensive* determination of every action.'" (quoting Fed. R. Civ. P. 1) (emphasis original)).  Defendants now seek the right to amend their contentions in some unspecified way to further expand an already complicated web of invalidity arguments.  The parties should be working toward simplification, and Defendants are seeking to take steps in the wrong direction.

## CONCLUSION

Defendants have not and cannot show good cause to amend their final invalidity contentions because they knew or should have known of the Metal Box cup fillers but decided not to investigate them.  Diligence requires Defendants to have taken steps to obtain discovery on the Metal Box cup filler early on in the case.  But Defendants did nothing, and are now attempting to

distort Mr. Taggart's deposition to justify a mulligan.  Steuben respectfully submits that this is improper and that Defendants' motion should be denied.

Respectfully submitted,

**DATED:**     November 10, 2016          **BARCLAY DAMON, LLP**

*/s/ Joseph L. Stanganelli*
Joseph L. Stanganelli
Thomas B. Cronmiller
2000 HSBC Plaza
100 Chestnut Street
Rochester, New York  14604
Telephone:  (585) 295-4305
jstanganelli@barclaydamon.com
tcronmiller@barclaydamon.com

**OBLON, McCLELLAND,
MAIER & NEUSTADT, L.L.P.**
Thomas J. Fisher
1940 Duke Street
Alexandria, Virginia  22314
Telephone:  (703) 413-3000
tfisher@oblon.com

*Attorneys for Plaintiff*
*Steuben Foods, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2016, I caused the foregoing document to be served electronically on Defendants' counsel of record.

_/s/ Joseph L. Stanganelli_____
Joseph L. Stanganelli